### CONLEY v. KING BRIDGE CO.

(Circuit Court of Appeals, Third Circuit. April 12, 1911.)

No. 3.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—GUIDE FOR PUNCHING PRESSES.

The Conley & Conley patent, No. 701,544, for a guide for punching presses for punching holes in building beams or girders, at exact predetermined intervals, either the same or different distances apart, the purpose being to secure accurate coincidence of the holes in different beams to be joined together by bolts or rivets by means of separately adjustable stops, was not anticipated and discloses invention, and is entitled to protection to the full extent of its disclosure; also *held* infringed.

2. PATENTS (§ 328*)—INFRINGEMENT—GAUGE FOR PUNCHING PRESSES.

The Conley patent, No. 735,469, for a gauge for punching presses, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suit in equity by Thomas Conley against the King Bridge Company. Decree (175 Fed. 79) for defendant, and complainant appeals. Reversed in part. Affirmed in part.

T. A. and J. B. Connolly, for appellant.

Albert L. Lawrence, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

BUFFINGTON, Circuit Judge. In the court below Thomas Conley filed a bill in equity against the King Bridge Company, charging infringement of all claims of patent No. 701,544, issued June 3, 1902, for a guide for punching presses, and of claim 2 of patent No. 735,-469, issued August 4, 1903, for a gauge for punching presses. That court held the respondent infringed neither of said patents, and from its decree dismissing the bill complainant appealed. These patents concern the punching of bridge or building beams or girders, which may be of great length, weight, and value. In punching bolt and rivet

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

holes in them—all of which must be done at the place of manufacture —the utmost exactness of location is imperative, since variations of a minute fraction of an inch from predetermined standards of measurement will destroy exact coincidence of bolt holes in beams intended to be joined together, and either render the false punched beam useless or necessitate the delay, extra work, and readjustment incident to the non-fitting of assembled parts. Moreover, the great weight, length, and unwieldiness of structural steel beams render it exceedingly difficult to secure the exact hole spacing necessary, while the requirement for minute exactness is rigid. The problem of accurately punching in advance in a mill the numerous and large sections of a bridge or a modern building so that the beams and girders will accurately assemble and bolt or rivet together when brought to their place over a stream or in a lofty building evidence the importance of the field of mechanical exactness to which these patents are addressed. They concern power punching presses, wherein, by the use of an adjustable guide or stop, holes are punched in beams at exact predetermined points. Previous to the device of patent No. 701,544, in the usual method of identically punching a number of such beams, either a scale on the bed of the table was used to regulate the location of the holes, or else the work was laid out by clamping to the beam a wooden pattern with bored guide holes. By these means the places for punching were marked by indenting the metal at each hole with a center punch. Both of these methods were slow, inaccurate, and expensive, and the work was done by a skilled mechanic. But even the most skilled operator could not make the holes exact duplicates in location, and thus more or less hand fitting adjustment was required before the beams could be used in construction work.

[1] The device by which Conley obviated these objectionable features is briefly described in his specification, as follows:

"This invention has relation to punching presses of that class known as 'power punching-presses,' and has for its object the provision of means whereby a duplicate number of articles may be speedily and accurately punched with but little, if any, danger of false punching and without the aid of skilled labor. This invention consists in the provision of an attachment or adjunct for punching-presses and consisting of an adjustable guide or stop which can be set to guide and hold the metal to be operated upon by the punch so that it will be punched at exact predetermined intervals either the same or different distances apart."

To secure these results, Conley used a power punch and adjoining table, both of common, well-known construction; the table being placed slightly below the level of the press anvil. Upon such table were placed rails or tracks on which traveled a car provided at its forward end with a grasping jaw to hold the beam in position under the punch. This car was moved backward and forward by a boy who walked alongside the track. Parallel with the track, at one side thereof and slightly above it, was a guide or support rail of angle iron riveted in L shape. This rail carried a number of slotted blocks or stops, each adjustably removable, and adapted to be secured in any position desired by means of a set screw. The car had at its side a reciprocating, spring-impelled rod, which, when in normal position, en-

gaged a block and stopped the car, and, when drawn back, disengaged itself from such block, and permitted the car to advance until the rod engaged the next one. The working of the device is well described in the specification, as follows:

"If, for instance, a number of pieces, say, twenty feet long, are to be punched at regular intervals of twelve inches apart, nineteen of the stops, G, are placed on the guide-rail and secured by means of their fastening screws exactly twelve inches apart. The metal to be punched is then placed under the punch and the first hole punched in its proper position. The end of the piece is then placed between the jaws and the jaws closed by means of the handle, E'. The car is now pushed forward by the helper until the projecting end of the rod comes into contact with the first block. The metal is now in position under the punch to have the second hole punched. The rod or shaft is now moved out of contact with the block by means of the pivoted lever and the car moved forward on its tracks till the end of the rod comes into contact with the next block, the alternate moving forward and stopping and punching the rod being continued till the piece is finished. * * * It will be seen that when the stops are properly placed and fastened on the guide-rail, G, any number of pieces can be punched and all of them will be exact duplicates. It will also be seen that no skill is required to operate the mechanism and that a much larger number of pieces can be punched in the same time on the same machine than where the metal must be accurately adjusted at each manipulation of the punch."

By means of this device the precise location of the hole is figured out in advance, the stops set to make the hole center accordingly, and, when the machine is thus set, an unskilled attendant can punch with great rapidity, in any number of successive beams, holes uniformly located. Moreover, the range of adjustability is such that either uniform or varying spaces can be left between the holes. This device was new in the metal punching art. The Perkins patent No. 634,246, for punching regular lines of needle perforations in paper, threw no light on the problem of bridge section punching. It bore no relation to the adjustment of punched parts through the instrumentality of bolts and rivets. Perkins' object was in one punching operation to so hold in place a large number of sheets of paper that they could all be punched at once. Conley's aim was to so insure the accurate centering of each individual hole in each individual beam that the first and last beams of a large series would be so precisely identical that the rivets or bolts connecting the two parts of a bridge, building, or other structure would accurately fit the holes of two connecting beams or sections without filing or fitting. Perkins simply held his sheets so that the whole number of clamped sheets remained in exact relation to each other while his line of needles made perforations, while Conley's object was to so adjust his machine that on every successive beam precisely the same punch centering was absolutely secured. It is clear, therefore, that the perforating of paper and the punching of bridge sections were so wide apart that the patents of the two inventors had wholly different objects in view, and contributed no helpful information to each other. So, also, save that they involved the metal punching art, the two Morgan patents, Nos. 167,461, and reissue 8,251, did nothing to solve Conley's problem, for they were simply addressed to punching a regular line of holes along the edge of boiler plates. Nor had the English patent of Roberts, No. 11,607, in the fifty odd

years that followed its issue in 1847, worked any advance in the punching art. Assuming its working capacity within its limits, for there is no proof of its practical use, it is obvious that its total reconstruction along inventive lines was necessary so as to embody in it any such possibility of adjustment as Conley disclosed in his simple adjustable stops, for Roberts' stops could only be used in multiples of the length of the device's teeth, while Conley's are adjustable to any desired spacing. Nor is there anything in the file wrapper proceedings in Conley's patent to restrict protection of his device to the full extent of its disclosure, for it will be observed that, while the Morgan patent cited was rightly held to preclude Conley from obtaining the five broad claims which would have covered all punching machines with stops, yet it will also be observed that the original sixth claim, which had the limitation of adjustable stops and predetermined intervals, was at once granted and retained through all the proceedings in the Patent Office and is claim 4 below.

Holding then the patent valid, we next inquire whether the respondent's infringe its claims, which are as follows:

"1. The combination with a punch or drill press, of a carriage, a reciprocating rod mounted on said carriage, and a series of separately-adjustable stops adapted to contact with said rod and stop the carriage at predetermined points.

"2. The combination with a punch or drill press and a carriage for conveying metal into position to be operated on, of separately-adjustable stops for stopping and retaining said carriage at predetermined points and means for causing the carriage to be engaged by and disengaged from said stops.

"3. The combination with a punch or drill press, of a carriage means for holding work in position on said carriage, a series of separately-adjustable stops, for stopping said carriage at predetermined points, and a manually-operable detent carried on the carriage and adapted to engage with said stops.

"4. The combination with a press and a movable carriage, of a guide for stopping said carriage consisting of a rail or rod provided with adjustable stops and adapted to stop the movement of the carriage at predetermined intervals."

We are clear they do. The difference between the respondent's machines and Conley's device is solely in form. In substance they are the same. The respondents, instead of placing their stops at the side of the track as Conley showed in his specification, place them above or on top of the track and their reciprocating rod works vertically instead of laterally. In both devices the stops are adjustable to any position, and can be located at predetermined intervals. But there is nothing in Conley's claims which restricts the use of his adjustable stops to a position at the side of the track. It is evident, therefore, that the respondent has availed itself of the substance of Conley's device by a mere shifting of parts, which in the shifted position still exert the identical functions of the device Conley first contributed to the art. It follows, therefore, as to patent No. 701,544 the respondent must be held to infringe.

[2] As to patent No. 735,469, we have reached a different conclusion. This latter was a mere improvement by Conley upon the device of No. 701,544, and such improvement lay in a particular form of stop. His purpose was to secure a finer and more accurate ad-

justment of the stops, and to preclude their displacement by continued impact of the carriage. This Conley did by cutting diagonal grooves on the outer side of the angle bar guide, and corresponding diagonal ribs on the inner surface of the stops. By the use of an elongated vertical slot in the stop through which it had a latitude of up and down movement on the stem of the set bolt, it will be seen that by moving the stop up or down a closer range of horizontal adjustment is obtained, and, after the desired position is secured, the stop can, through the diagonal grooves and ribs, be immovably locked in that position by its set screw. On this device Conley obtained the claim in question, viz.:

"2. The combination with a press and a carriage for moving metal into different positions with relation to the press, of stop-blocks having diagonal ribs on their inner faces and a guide-rail upon which said stop-blocks are mounted, having diagonal grooves with which the ribs of the stop-blocks engage."

On the other hand, the respondents do not obtain the same range of adjustment, and such as they do obtain is secured by different means. In their stop, which, as stated in considering the other patent, is placed on top of the track, they do not have diagonal grooves on the track or diagonal ribs on the stop, and therefore do not use the elements Conley specified in his claim. It is true they get microscopic adjustment by their device, but Conley did not by his claim obtain a monopoly of all means of obtaining such close adjustment, but only of obtaining it by the use of stop-blocks "having diagonal ribs on their inner faces" and guide-rails "having grooves with which the ribs of the stop-blocks engage." As the respondents employ no such means, but get lateral adjustment by the familiar expedient of a diagonal slot in their stop-block in connection with a set screw, they do not infringe.

We accordingly hold the decree below should be affirmed so far as it dismisses the bill as to patent No. 735,469, and be reversed as to patent No. 701,544, the costs here and below to be paid by the respondent.