### CONLEY v. THOMAS.

(District Court, W. D. Pennsylvania. March 7, 1913.)

No. 130, in Equity.

1. PATENTS (§ 327*)—SUIT FOR INFRINGEMENT—PREVIOUS ADJUDICATION OF VALIDITY.

Where a patent has been sustained by an appellate court, its validity must be assumed by a subordinate court in a subsequent suit, unless the record contains new evidence which presumably would have produced a different decision if it had been before the court in the prior suit.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 620–625; Dec. Dig. § 327.*]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—GUIDE FOR PUNCHING PRESSES.

The Conley & Conley patent, No. 701,544, for a guide for punching presses, held not anticipated and valid, but not infringed by the machine of the Thomas patent, No. 908,818.

In Equity. Suit by Thomas Conley against George P. Thomas, trading as the Standard Bridge Tool Company. On final hearing. Decree for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Connolly Bros., of Washington, D. C., for complainant.
Christy & Christy, of Pittsburgh, Pa., for defendant.

YOUNG, District Judge. The complainant sets up in his bill that the patent No. 701,544, granted to Thomas and John R. Conley, dated June 3, 1902, and duly assigned to complainant, has been infringed by defendant's device made in conformity with patent No. 908,818, granted to George P. Thomas and dated January 5, 1909. The defenses are invalidity of the Conley patent and noninfringement.

[1] The Conley patent was before the court in the case of Conley v. King Bridge Co. (C. C.) 175 Fed. 79, and upon appeal from that decision was in the United States Circuit Court of Appeals for the Third Circuit, 187 Fed. 137, 109 C. C. A. 412, where the patent was sustained, and we must therefore assume that the patent in suit was a valid patent, unless there appears in the evidence other patents or devices in public use than those considered by the court in the King Bridge Case and which, if brought to the attention of the court, it is presumed would have resulted in a different decision. The rule which governs us in considering this case as to the validity of the patent is well laid down in Badische Anilin & Soda Fabrik v. A. Klipstein & Co. (C. C.) 125 Fed. 543, where the learned court says:

"When a patent has once been sustained by an appellate court, a subordinate court dealing with the same patent subsequently inquires, first, whether the second record contains anything not before the appellate court, and, if it finds something new, inquires next whether the new matter is of such a character that it may be fairly supposed that the appellate court would have reached a different conclusion had it been advised of its existence. The authority of its decision is not limited to the facts and defenses discussed in its opinion, but extend to all that were before it in the record."

[2] Not only are we bound by the decision in the King Bridge Case, but a careful consideration of the opinion of Judge Cross in the District Court and of Judge Buffington in the Court of Appeals leads us irresistibly to one conclusion, and that is that the Conley patent is a valid patent for the device set out in its claims, and that no patent and no device testified to in that case contains the original and novel features of that patent. The novel features of that patent were, as stated in claims 1, 3, and 4, which by the admission of counsel are the only claims involved in this suit, as follows:

"1. The combination with a punch or drill press, of a carriage, a reciprocating rod mounted on said carriage, and a series of separately adjustable stops adapted to contact with said rod and stop the carriage at predetermined points."

"3. The combination with a punch or drill press, of a carriage, means for holding work in position on said carriage, a series of separately adjustable stops, for stopping said carriage at predetermined points, and a manually-operable detent carried on the carriage and adapted to engage with said stops. * * *

"4. The combination with a press and a movable carriage of a guide for stopping said carriage consisting of a rail or rod provided with adjustable stops and adapted to stop the movement of the carriage at predetermined intervals."

The novel features of these claims can perhaps be better understood by considering the testimony of F. L. O. Wadsworth, where on pages 27, 29, and 31 of complainant's record he analyzes them as follows:

"1. A combination with (1) a punch or drill press of (2) a carriage, (3) a reciprocating rod mounted on said carriage and (4) a series of separately adjustable stops adapted to contact with said rod and stop the carriage at predetermined points."

"3. The combination with (1) a punch or drill press of (2) a carriage, (3) means for holding work in position on said carriage, (4) a series of separately adjustable stops for stopping said carriage at predetermined points, and (5) a manually operable detent carried on the carriage and adapted to engage with said stops.

"4. The combination with (1) a press and (2) a movable carriage of (3) a guide for stopping said carriage consisting of a rail or rod provided with adjustable stops and adapted to stop the movement of the carriage at predetermined intervals."

It will be observed, as said by Prof. Wadsworth (C. R. 29):

"In this claim (referring to claim 3) the parts set forth as elements (1) (2) are the same as those referred to in the corresponding elements of claim 1. The third element comprises the parts which are indicated by the reference character F in the drawings and description of the Conley patent, these being the parts which grip or clamp one end of the piece of work and hold it in position in or on the carriage so that it will be drawn along with said carriage and stopped when the carriage stops. Element (4) of claim 3 comprises the same parts as are referred to in the correspondingly numbered element of claim 1, to wit, the series of removable, and separately adjustable stop blocks G G, etc., which are set in advance at predetermined intervals apart corresponding to the longitudinal intervals between the holes to be punched in the piece of work which is held on the carriage by the means specified in element (2) of this claim. Element (5) of the claim now under consideration is the part which in Conley's illustrative embodiment of his invention is indicated by the reference character I, this part being 'manually operable' through the medium of the handle J, which draws the finger or stop bar I out of contact with the stop block for the purpose of allowing the carriage and the work carried thereby to be moved forward the proper interval for the punching of the succeeding hole."

Referring to claim 4 (C. R. 31) Prof. Wadsworth says:

"In this claim elements (1) and (2) are the same as the correspondingly numbered elements of the preceding claim. The third element comprises the parts which in Conley's illustrative embodiment of his invention are indicated by the reference characters F and G G, etc. It will be observed that this claim does not specify or describe any particular mechanism, by the cooperation of which with the blocks G, the carriage is stopped at the predetermined intervals required for the production or reproduction of the desired series of punch holes in the work."

It will be seen that the vital elements of these claims are a series of separately adjustable stops for stopping the carriage at predetermined points and a manually operable detent carried on the carriage and adapted to engage with the stops.

Let us now examine the new matter in order to determine whether or not, if it had been before the court, it is supposed that its decision would have been different. The following patents, publications, and machines alleged to have been in prior use have been set up by the defendant in his answer and amended answer, viz.: Defend-

ant's Exhibit No. 4, Phoenix Column Segment Machine (D. R. 417); defendant's photograph of Carnahan's machine, Exhibit No. 6. (D. R. 429–431); Defendant's Exhibit No. 8, detail Carnahan machine (D. R. 421); the Greenlee catalogue, 1892, Defendant's Exhibit No. 11; Greenlee catalogue, 1895, Defendant's Exhibit No. 12; the Long & Allstatter catalogue, Defendant's Exhibit No. 29—and the following letters patent; Carnahan's patent, No. 651,233, of 1900 (D. R. 421), Defendant's Exhibit No. 9; Greenlee patent, No. 283,-341, of 1883, Defendant's Exhibit No. 13 (D. R. 310); Greenlee patent, No. 418,978, of 1890, Defendant's Exhibit No. 14 (D. R. 324); Bill patent, No. 39,209, of 1863, Defendant's Exhibit No. 23 (D. R. 264); Carroll et al. patent, No. 164,673, of 1875, Defendant's Exhibit No. 24 (D. R. 268); Harris patent, No. 494,140, of 1893, Defendant's Exhibit No. 26 (D. R. 348); Morgan patent, No. 173,-132, of 1876, Defendant's Exhibit No. 30 (D. R. 280); Morgan patent, No. 213,770, of 1879, Defendant's Exhibit No. 31 (D. R. 284); Seller's patent, No. 236,096, of 1880, Defendant's Exhibit No. 32 (D. R. 298); Crawford patent, No. 584,673, of 1897, Defendant's Exhibit No. 34 (D. R. 392); Van Wageman patent, No. 484,832, of 1892, Defendant's Exhibit No. 37 (D. R. 336); Henderson patent, No. 524,203, of 1894, Defendant's Exhibit No. 38 (D. R. 364).

The Van Wageman patent, No. 484,832, and the Henderson patent, No. 524,203, must be excluded as new matter, as they are both referred to in the file wrapper of the Conley application, and must be presumed to have been considered by the court, under the decision we have referred to, as having appeared in the record on the former consideration of the case.

In a consideration of this new matter we are to be controlled by and make our examination of them in the light of the conclusion of the Court of Appeals, as stated in its opinion in King Bridge Case, supra, regarding the patent in suit, where it is said on page 139 of 187 Fed., page 414 of 109 C. C. A.:

"By means of this device the precise location of the hole is figured out in advance, the stops set to make the hole center accordingly, and, when the machine is thus set, an unskilled attendant can punch with great rapidity, in any number of successive beams, holes uniformly located. Moreover, the range of adjustability is such that either uniform or varying spaces can be left between the holes. This device was new in the metal punching art."

And again on page 140 of 187 Fed., page 415 of 109 C. C. A.:

"Nor is there anything in the file wrapper proceedings in Conley's patent to restrict protection of his device to the full extent of its disclosure, for it will be observed that, while the Morgan patent cited was rightly held to preclude Conley from obtaining the five broad claims which would have covered all punching machines with stops, yet it will also be observed that the original sixth claim, which had the limitation of adjustable stops and predetermined intervals, was at once granted and retained through all the proceedings in the Patent Office, and is claim 4 below."

Complainant's expert (C. R. 30) has thus briefly described the patent:

"The prime object of the combination is to provide a simple, easily controlled, and accurately operating mechanism, whereby, as already explained,

a series of holes can be punched in a piece of work at regular or irregular intervals determined in advance by the setting or adjustment of a series of blocks or elements, and this series of holes reproduced with great accuracy and speed in any number of pieces of work."

A careful examination and consideration of these machines, publications, and patents shows that no one of them contains the original and novel feature of separately adjustable stops, which may be adjusted with the micrometric accuracy of which the Conley device is susceptible. Much less can they be said to have solved the problem which Conley solved by his device, viewed in the light of the decision of the Court of Appeals, as we have noted above. We therefore conclude, as was said in the King Bridge Case:

"The Conley patent, No. 701,544, is a valid patent to the full extent of its disclosure, as set out in the four claims."

Let us now see if the defendant's machine infringes the patent sued on. We have seen that the real feature of the patent is the combination with a press and movable carriage of a guide for stopping said carriage consisting of a rail or rod provided with adjustable stops and adapted to stop the movement of the carriage at predetermined intervals. The defendant's machine is admitted to be in conformity with his patent No. 908,818, as stipulated by the parties (C. R. 33). The patent is found in complainant's record, page 258, and a simplified drawing and description thereof is found in defendant's brief, page 20, which we may adopt in examining the infringing device:

"In this drawing (Fig. 6), 8 is the trigger, 14 is a connecting rod between trigger 8 and a crank 12, crank 12 is rigid on the rotatable shaft 13, and shaft 13 (as has already been explained) carries latch 17. 32 is a hand-operated releasing lever.

"As carriage A advances, trigger 8 engages a pin 7 and swings; as trigger 8 swings, shaft 13 is turned, catch 17 swung, and detent 19 released to fall and engage toothed plate 20. After such engagement has taken place and the carriage has stopped and after the ensuing punching operation has been performed, hand-lever 32 is swung. On the swinging of lever 32 the follow-

ing movements follow: First, (through connections not shown on the diagram) detents *19* are raised again to normal inoperative position, and, second, trip or trigger *8*, now raised above stop *7*, swings forward, and with it the connected parts *12* and *17* turn on their shaft *13* to bring latch *17* again to detent-locking position; lever *32* is then released, and trip or trigger descends again to a position where on further advance of the carriage it will engage the next pin *7*."

The machine is a movable carriage provided with means for gripping the material to be punched, and provided with a templet fastened along the side of the toothed plate *20* in which templet are placed pins at predetermined intervals, so that as the carriage moves the finger *8* will strike the pin *7* and release the latch *17*, which in turn, will release the detent *19*, and cause the detent to engage with the toothed plate *20*, thus arresting the carriage. The pins *7* are set in the templet *6* (Fig. I. C. R. 258), but the pins are not separately adjustable. The templet is prepared by fastening in it the pins at the intervals required for the work of a certain design, and, if a new design of work is required, then a new templet must be prepared either by withdrawing the pins and replacing them or by substituting another templet with a new arrangement of pins, and of course this rearrangement, even if it be called a separate adjustment, is incapable of the micrometric or microscopic adjustment which is so peculiarly advantageous in the Conley device. There is not thus provided a rail or rod or guide with separately adjustable stops. The Thomas patent, in respect of the templet and pins, resembles the stopping device of the spacing tables of the Phœnix Iron Company, Defendant's Exhibit No. 3 (D. R. 415), of the King's Bridge Company, Defendant's Exhibit No. 10 (D. R. 423), and of the Union Bridge Company, Defendant's Exhibit No. 5 (D. R. 419), considered by Judge Cross in the lower court, but not referred to by the Court of Appeals, and the Phœnix Column Segment Machine, Defendant's Exhibit No. 4 (D. R. 417), now introduced as new matter, more than it does the separately adjustable stopping device of the Conley patent, for the Thomas templet and pins are more in conformity with the spacing tables referred to than with the Conley device, and, if the Thomas templet and pins are regarded as an infringement of the Conley patent, then clearly it follows logically that that is held to be an infringement which would have anticipated the Conley patent; but it has been held by the lower court and because not referred to it must be assumed that the appellate court in making its decision considered and concluded that the spacing tables of the Phœnix Iron Company, King Bridge Company, and Union Bridge Company did not anticipate the Conley device. Therefore the Thomas device cannot be regarded as an infringement of the Conley patent. The pins are not stops in the sense in which those appliances were used in the Conley patent. The Conley patent says of these stops in the first claim, "and a series of separately adjustable stops adapted to contact with said rod and stop the carriage at predetermined points"; in claims 3, "a series of separately adjustable stops for stopping said carriage at predetermined points"; and in claim 4, "a rail or rod provided with adjustable stops and adapted to stop the movement of the carriage at predetermined intervals."

We thus see that in the Conley patent the stops are designed and adapted for the purpose by the manually operated detent coming in contact with them of physically arresting the carriage. But it is said the contact of the finger *8* with the pin *7* in the templet *6* does stop the carriage, because the striking of the finger *8* against the pin *7* releases the latch *17*, and thus causes the detent *19* to engage with the toothed plate *20*, and thus stop the carriage. The difficulty here is that the toothed plate *20* is only capable of a certain number of stops, and, if its indentations are to be regarded as the stops, then they are not adjustable to any desired space, as was said of the Roberts' patent by the Court of Appeals in the King Bridge Case, "for Roberts' stops could only be used in multiples of the length of the device's teeth, while Conley's are adjustable to any desired spacing." While there are many points of resemblance between the Conley and Thomas patents, as shown by the voluminous testimony of both complainant's and defendant's experts, and many points of differences as shown by the same testimony, the resemblance arises, we think, from the fact that both patents were designed as improvements over the prior art, and therefore not only resemble machines in the prior art, but each other. We do not find in the Thomas machine any infringement of the Conley patent, viewing it as "a combination with a press and a movable carriage consisting of a rail or rod provided with adjustable stops and adapted to stop the movement of the carriage at predetermined intervals."

For the reason, then, that the device of the defendant made in conformity with the Thomas patent No. 908,818 does not infringe the Conley patent No. 701,544, the bill will be dismissed, with costs.