## ROUSSO v. CITY TOWEL SUPPLY CO.

(District Court, S. D. California, S. D.  September 25, 1916.)  No. C–33.

1. PATENTS ⚖⇒328—VALIDITY AND INFRINGEMENT—TOWEL CABINET.
   The Rousso patent, No. 1,157,046, for a towel cabinet, was not anticipated by similar devices in the art of paper and card files, but the patented device is sufficiently differentiated from them to show patentable invention, even conceding that to be an analogous art.  Claims 1 to 6, inclusive, also *held* infringed.

2. PATENTS ⚖⇒22—INFRINGEMENT—SUBSTITUTION OF MECHANICAL EQUIVALENTS.
   The fact that, instead of a rod in a patented device, a chain is used, does not avoid infringement, where the chain performs the same function as the rod, even though it affords an additional advantage, which would entitle defendant to a patent.

3. PATENTS ⚖⇒27(1)—INVENTION—ADAPTATION OF DEVICE TO ANALOGOUS ART.
   Changes made in adapting a device to use in a different, but analogous, art, although slight in themselves, may be substantial, when they substantially change the method of operation; and the very fact that the needed change is slight may be one of the obstacles to its discovery.

In Equity.  Suit by Jacques Rousso against the City Towel Supply Company.  On final hearing.  Decree for complainant.

Joshua R. H. Potts, of Chicago, Ill., and Frederick S. Lyon, of Los Angeles, Cal., for plaintiff.
Ingall W. Bull, of Los Angeles, Cal., for defendant.

CUSHMAN, District Judge.  [1] Complainant has waived his claim of infringement, save as to claims 1 to 6, inclusive, of his patent, No. 1,157,046, for a towel cabinet.  It is considered only necessary to quote two of these claims, the first and sixth, being the broadest and narrowest of the claims alleged to be infringed:

"1. In a device of the class described, a towel support, and a retaining member extending upwardly from said support and then downwardly sufficiently to constitute a suitable guide for a towel while in use, substantially as described."

"6. In a device of the class described, a towel support, and a retaining member extending upwardly from adjacent the outer edge of said support, then outwardly and downwardly sufficiently below said support, then inclined rearwardly and downwardly under said support and then downwardly substantially vertically, to constitute a suitable guide for a towel while in use, substantially as described."

Assuming that Cassell's English patent, No. 12,176, for an improvement in boxes for storing and delivering towels, is part of the prior art, although complainant contends that in the absence of evidence as to its utility it is not to be so considered, the unappropriated field in the art was doubtless greatly narrowed thereby.  The Cassell patent had a towel support and a member extending downwardly therefrom, con-

stituting a guide for a towel while in use; but a retaining member extending upwardly from the towel support and then downwardly, as described in the claims and specifications of the patent in suit, were new in the towel cabinet art. The important effect of this change in the shape of the retaining and guide member will be pointed out later.

The only other, and the chief, question of importance in the case is the question of whether the patent in suit is not invalid by reason of similar devices in the art of paper and card files, which it is contended by the defendant is a part of an analogous art. Among these are the patent to Slaton for a file or bill book, No. 522,860; the Stahle, for a temporary binder, No. 533,678; the Swank, for a bill file, No. 533,-972. Before the original examiner these claims in the patent in suit were rejected upon reference to the foregoing and other patents, but upon appeal to the board of examiners in chief the action of the original examiner was reversed and claims allowed.

I do not consider the fact that paper towels were at the times in question a part of the towel art affects this question, as we are concerned with the towel cabinet art. Paper towels are neither retained in use, nor, after use, for future use. In order to determine whether the bill file art is analogous to the towel cabinet art, it is not only necessary to take into consideration the similarities and differences of the material of towels, cards, and bills used in the towel cabinet and the bill file, and its effect upon the operation, but likewise the operation used and means for accomplishing it. In the bill file, the bill or card is of smooth stiff paper. Ordinarily, the towel is the opposite in both particulars. The bills in the file are to be kept as rigidly and compactly as possible in position, for which purpose most of the files proven have contained two rods, wires, or retaining members, and, if not, with two wires containing another member to bring about the same result. In the operation in the case of the bill or card, the retaining member is made the section of an arc, instead of having the bills or cards either simply swing from an axis, as in the case of the leaves of a book, or placed upon a straight file, and this in order that there might be a break or joint in the retaining member wherein a bill or card could be removed or inserted without taking the other bills or cards from this member.

There is no other intervening manipulation of the card or bill between the positions of the cards or bills, resting upon their original pallet, at one end of the file, or left lying or suspended at the other. There is, therefore, no necessity for freedom of movement in the case of the bill or card, except sufficient to bring it along the wire to this break in the file member and remove it, and the only advantage from the length of the file is to allow of this operation. The necessity for this purpose limits its extent. In the case of the towel cabinet this is not true. It is of considerable benefit to have the dirty towels removed as far as possible from the clean towels, and it is necessary along the guide or retaining member to bring the towel in use to a convenient point for its manual and facial manipulation by the party using it. In the case of the bill or card file, the object is at all times to keep the bills or cards in order; hence the advantage of having two guides. In the case of the towel cabinet, the opposite is true, as in its manual and facial manipulation the greatest freedom possible, necessarily resulting in its

crumpling, is of importance. The gooseneck form of the retaining member in the towel cabinet renders it necessary to remove the towel by lifting against the force of gravity, itself preventing disorder among the towels, then bringing down and forward to the position of use.

[2, 3] The fact that, in the infringing device, instead of a rod a chain is used in the downward course of this guide, does not substantially differentiate the two devices, as in this particular the chain is the equivalent of a rod. It may afford an additional advantage in giving a slight degree of additional freedom in the manipulation of the towel in use; but, while that may be an advantage entitling the defendant to a patent, it is not such a substantial change over the guiding member of the patent in suit as to avoid an infringement. If it were conceded that the bill file art and the towel cabinet art were analogous, yet the change in the device of the patent in suit over the bill file is sufficient to substantially differentiate the two. For this change is in a particular, effecting the use of the towel, which is the main purpose and object of the patent itself; the retention of the clean towels in a convenient position, and the retention of the soiled towels, being but minor associated objects. Changes may be slight in themselves, but substantial, when they substantially affect the method of operation, as these changes certainly do. With analogous arts, the one standing beside the other, the very fact that the needed change is slight may be one of the obstacles to its discovery. For this reason the fact that a change is required becomes important and decisive.

The patent is held valid, not anticipated, and claims 1 to 6 infringed by the defendant.