## ROUSSO v. FIRST NAT. BANK IN DETROIT et al.

District Court, E. D. Michigan, S. D. May 11, 1927.

No. 472.

1. Patents �köm297(3)—Federal District Court should follow patent decisions of courts of appeal of other jurisdictions, unless palpably erroneous.

Though patent decisions of courts of appeal of other jurisdictions are not binding on federal District Court, such decisions should be followed, unless showing a very palpable error in law or fact.

2. Patents ⊙═297(2)—One attacking decision of appellate court holding patent invalid has burden of proof.

Burden of proof is on one attacking decision of Court of Appeals of District of Columbia and Circuit Court of Appeals of federal circuit holding patent invalid.

3. Patents ⊙═328—1,157,046, for device to prevent theft of towels from public washrooms, claims 1, 2, 3, and 5, held invalid.

Rousso patent, No. 1,157,046, for device to prevent theft of towels from public washrooms, claims 1, 2, 3, and 5, held invalid.

4. Patents ⊙═328—1,295,578, for device to prevent theft of towels from public washrooms, claim 1, held invalid.

Olsen patent, No. 1,295,578, for device to prevent theft of towels from public washrooms, claim 1, held invalid.

5. Patents ⊙═328—1,295,578, for device to prevent theft of towels from public washrooms, claims 3 and 5, held not infringed.

Olsen patent, No. 1,295,578, for device to prevent theft of towels from public washrooms, claims 3 and 5, held not infringed.

In Equity. Suit by Jacques Rousso against the First National Bank in Detroit and others. Bill dismissed.

Joshua R. H. Potts, of Chicago, Ill., and Thomas S. Donnelly, of Detroit, Mich., for plaintiff.

Edward N. Pagelsen and Bishop, Kilpatrick & Weaver, all of Detroit, Mich., and M. A. Keller, of New York City, for defendants.

TUTTLE, District Judge. This suit was brought on Rousso patent, No. 1,157,046, and Olsen patent, No. 1,295,578, owned by Rousso.

The invention set forth in the Rousso patent is simple and useful, and is designed to prevent the theft of towels from public washrooms by threading them on a rod which extends upward from a supporting shelf, then forward and downward in the form of a gooseneck, and backward into a receptacle for the soiled towels.

The claims of this Rousso patent in suit are as follows:

"1. In a device of the class described, a towel support, and a retaining member extending upwardly from said support and then downwardly sufficiently to constitute a suitable guide for a towel while in use, substantially as described.

"2. In a device of the class described, an elevated towel support, and a retaining member extending upwardly from said support and then downwardly sufficiently below said support to constitute a suitable guide for a towel while in use, substantially as described.

"3. In a device of the class described, an elevated towel support, and a retaining member extending upwardly from said support and then downwardly sufficiently below said support, said retainer being provided below said support with a substantially vertical portion of considerable length to constitute a suitable guide for a towel while in use, substantially as described."

"5. In a device of the class described, a towel support, and a retaining member extending upwardly from adjacent the outer edge of said support and then downwardly sufficiently to constitute a suitable guide for a towel while in use, substantially as described."

Defendants substituted a chain for the rod, the chain being supported by the stack of towels, which, as in the Rousso structure, lie flat on the supporting shelf and are formed with eyelets to permit sliding on the chain. The soiled towels slide down the chain into the receptacle provided therefor.

If there were no other points in this case, the question of infringement of the Rousso patent would present no serious difficulty, as defendants' chain is the equivalent of Rousso's gooseneck rod. The history of this patent, however, is most unusual and must be carefully considered.

The Rousso device was widely copied, and the patent was sustained in a number of suits; Rousso v. Towel Supply Co. (D. C.) 242 F. 655, and Chicago Towel Co. v. Rousso, 248 F. 693 (C. C. A. 7), being among those of record. The prior efforts of Solomon, to be considered below, were not called to the attention of these courts.

Rousso filed his application January 12, 1912, and received his patent on October 19, 1915. He also filed application for design patent on the structure shown in his mechanical patent on January 5, 1912, and was granted design patent No. 42,398 on April 9, 1912. During the time the patent in suit was pending—that is, on December 31, 1912—one Harry Solomon also filed an application for patent on a towel cabinet, and offered no serious objection to his claims being limited by the Patent Office on the ground that his invention was anticipated by the design patent of Rousso. Correspondence between Solomon and his attorney is of record. Solomon was granted patent No. 1,080,855, with limited claims, on December 9, 1913. As Solomon made no attempt to antedate the Rousso design patent, the Patent Office did not feel called upon to institute interference proceedings between the applications of Rousso and Solomon, but granted Solomon a patent with narrow claims, and Rousso a patent with broad claims.

Shortly after the Rousso patent was granted—that is, on December 6, 1915—Solomon surrendered his patent and asked that it be reissued, including in his application a number of the claims of the Rousso patent, especially claims 1 and 5 of the Rousso patent, which are here in suit. An interference was thereupon declared between the Rousso patent, the Solomon application, and the applications of two others, Fetherolf and Brigham. After testimony and argument, the Examiner of Interferences awarded priority to Brigham. Both Rousso and Solomon appealed to the Board of Examiners in Chief, a tribunal of three men, who awarded priority to Solomon over Rousso. The Acting Commissioner of Patents, on appeal by Rousso, reversed the board and awarded priority to Rousso over Solomon, but he was reversed by the Court of Appeals of the District of Columbia, a second tribunal of three men. Solomon v. Rousso, 50 App. D. C. 333, 271 F. 799. A careful study of the record before the Court of Appeals of the District of Columbia leads me to agree with the Commissioner, and not with the board and the court; but it is not my province to review the action of that court, but rather my duty to take that decision as it is and reach a different conclusion only in case the record before me conclusively shows that court to have erred.

Rousso accepted this decision as final, and did not avail himself of his right to retry the issue before a District Court of the United States, under section 4915 of the Revised Statutes (Comp. St. § 9460), with right to appeal to a Circuit Court of Appeals. As this course was open to him and was not followed, it would seem that he has acquiesced in the decision of the Court of Appeals of the District of Columbia on

the facts before it. This decision was handed down on April 4, 1921. Instead, Rousso petitioned the United States Supreme Court for a writ of certiorari, but this was refused. Rousso v. Solomon, 256 U. S. 701, 41 S. Ct. 623, 65 L. Ed. 1178.

Thereafter Rousso brought the suit reported as Rousso v. Barber, 299 F. 801, in the District Court at Pittsburg. Much of the same testimony presented by him in the interference proceedings was there presented by Rousso, and the Solomon testimony in the interference was presented by the defense. Some additional and corroborating testimony was presented by both parties, but the District Court agreed with the Court of Appeals of the District of Columbia, that Solomon had reduced the invention to practice in March, 1911, while the earliest date which could be awarded to Rousso was December, 1911. This court held the patent invalid.

This decision was affirmed on appeal. Rousso v. Barber (C. C. A.) 3 F.(2d) 740. A petition to the United States Supreme Court for a writ of certiorari was denied, although in this last decision the Circuit Court of Appeals of the Third Circuit held the patent invalid, while the Circuit Court of Appeals of the Seventh Circuit, in Chicago Towel Co. v. Rousso, supra, had sustained the patent. Rousso v. Barber, 267 U. S. 596, 45 S. Ct. 352, 69 L. Ed. 805.

[1] While decisions of courts of appeal of other jurisdictions are not binding upon this court, such decisions should be followed, "unless convinced of a very palpable error in law or fact." Cincinnati Butchers' Supply Co. v. Walker Bin Co. (C. C. A.) 230 F. 453. Or, as stated in Badische Anilin & Soda Fabrik v. Klipstein (C. C.) 125 F. 543, 546:

"The rule is well settled that, when a patent has once been sustained by an appellate court, a subordinate court, dealing with the same patent subsequently, inquires, first, whether the second record contains anything not before the appellate court (whether mentioned in its opinion or not), and, if it finds something new, inquires next whether the new matter is of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, had it been advised of its existence."

This rule was also stated by the court in Flat Slabs Patents Co. v. Wright, Barrett & Stilwell Co. (D. C.) 283 F. 345, where a large number of decisions which recognized this rule are listed.

In order that this court might determine whether there is any new matter presented by the parties to the present case "of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, had it been advised of its existence," the record before the Circuit Court of Appeals in the Barber Case and the new testimony in the present case have been carefully considered and compared.

The Solomon construction, described in the testimony of the interference record, and in the record of the Barber Case, and in the Dalmar testimony before me, differs so little from that of the Rousso patent that an analysis thereof is unnecessary.

The testimony of defendants' witness Dalmar is practically the same as that which he gave during the interference proceedings and in the Barber Case. But he fixes the time when he first saw Solomon's first cabinet by packing cases in the basement of a new store, which he said must have been in the spring of 1911, because these goods were moved at the beginning of 1911, and had not been unpacked, and the traveling salesmen of his employers, of whom Solomon was one, always met in March of each year. He also stated that Cohen, plaintiff's witness, knew about this first cabinet. Dalmar also testified as to a second cabinet, which was brought to his attention a year or so later. Plaintiff's witness Cohen testified that on the day he first saw the Solomon cabinet he took Solomon to a nearby saloon and showed him a Rousso cabinet. He fixes this to have been in 1913 or 1914. But Solomon had filed his application in December, 1912. The testimony of the other witnesses for plaintiff shows that the Rousso cabinet was in this saloon in 1912, and this date was accepted by the interference tribunals and the Circuit Court of Appeals of the Third Circuit.

[2, 3] Dalmar has no written record to fix the time when he saw the first Solomon cabinet, but neither has he anything to determine when Cohen first saw a Solomon cabinet. Cohen says he saw the Solomon cabinet in 1913 or 1914. The testimony of neither party carries conviction, but as the burden of proof is upon him who attacks the decision of the Court of Appeals of the District of Columbia and of the Circuit Court of Appeals of the Third Circuit, this court must follow the decisions of these courts, and hold claims 1, 2, 3, and 5 of the Rousso patent in suit invalid.

While this court is not controlled by the decision of the interference tribunals and of the Circuit Court of Appeals of the Third Circuit, my decision should be in har-

mony therewith, unless this record clearly establishes the contrary, and I find the presumption in favor of priority of invention by Solomon is not overcome. I am not justified in saying that the plaintiff has met the burden of proof.

The Olsen patent in suit discloses a modification of the Rousso structure. Instead of the rigid gooseneck rod, Olsen employs a chain extending upward through the towels and then hanging down, being held up by the stack of towels alone. After the Rousso patent was granted and his cabinets were on the market, imitators suggested the use of the chain. This is clearly established by the decision in Chicago Towel Co. v. Rousso, supra; the bill of complaint in that case having been filed in 1915. Olsen filed his application on January 8, 1919. Olsen shows a board attached to the front of his shelf to prevent the towels from falling off, the board being formed with a vertical slot to guide the chain, the slot extending down almost entirely across the board. But a portion of the board is left so that the chain extends around or "encircles" the board. Defendants' structure employs two narrow hinged doors at the lateral ends of the towel cabinet, but there is no suggestion of "a guide" for the chain, nor a portion "encircled" by the chain.

The claims of this Olsen patent in suit are:

"1. In a device of the class described, a towel support, a flexible retaining member extending upwardly from said support through the towels arranged on said support and then downwardly beyond the edges of the towels, whereby the upper portion of said retaining member is unsupported except by the towels on said towel support, and the upward extension of said retaining member is determined by the height of the stack of towels on said towel support, and means for holding the towels against horizontal displacement from said towel support, said means being vertically slotted to permit of free downward vertical movement of said retaining member as the number of towels on said support diminishes, substantially as described."

"3. In a device of the class described, a towel support, a flexible retaining member extending upwardly from said support through the towels arranged on said support and then downwardly, and means encircled by said retaining member for holding the towels against horizontal displacement from said towel support and permitting of free downward vertical movement of said retaining member above said towel support as the number of towels on said support diminishes, substantially as described."

"5. In a device of the class described, a towel support, a flexible retaining member extending upwardly from said support through the towels arranged on said support and then downwardly, whereby the upper portion of said retaining member is unsupported except by the towels on said towel support, and means for holding the towels against horizontal displacement from said towel support, said means permitting free downward vertical movement of said retaining member as the number of towels on said support diminishes, and guiding said retaining member in said movement thereof, substantially as described."

[4] There would be no invention in placing the towels of the Ammann patent, No. 1,181,983, when strung on a wire or chain, on the shelf of the cabinet of the Rousso patent in suit. There would be no invention in omitting the fork 20 of the standard 15 of this Ammann patent, and then permitting the wire 21 of Ammann to be supported by the towels. Ammann states that he may use a flexible cord or chain in place of the wire. There would be no invention in substituting the board 7 of the Steiner patent, No. 1,256,274, for the standard of Ammann, and in permitting the chain to hang loosely from the towels. In view of these patents of record, and in view of the clear disclosure in the Chicago Towel Case, I hold claim 1 of the Olsen patent invalid.

[5] As defendants' structure lacks the "means encircled by the retaining member" specified in claim 3, and also lacks "means for holding the towels against horizontal displacement * * * and guiding said retaining member," specified in claim 5, I hold these two claims not infringed.

The bill of complaint is dismissed, with costs to be recovered by defendants.