### CARSON INV. CO. et al. v. CALUMET & ARIZONA MINING CO.

### SAME v. PHELPS DODGE CORPORATION.

District Court, D. Arizona. November 19, 1928.

#### Nos. E–139, E–140.

John H. Miller, Charles S. Wheeler, Jr., both of San Francisco, Cal., John M. Zane, of Chicago, Ill., A. W. Boyken, of San Francisco, Cal., and John H. Campbell and Archie Conner, both of Tucson, Ariz., for plaintiffs.

John Mason Ross, of Bisbee, Ariz., H. A. Elliott, of Phœnix, Ariz., and Arthur A. Olson, of Chicago, Ill. (Ellinwood & Ross, of Bisbee, Ariz., of counsel), for defendant Phelps Dodge Corporation.

Cleon T. Knapp, James P. Boyle, and Harry E. Pickett, all of Douglas, Ariz. (Knapp, Boyle & Pickett, of Douglas, Ariz., of counsel), for defendant Calumet & Arizona Mining Co.

SAWTELLE, District Judge. These cases, involving the same questions, were, by order of court, tried together and argued as one case. Plaintiffs filed a complaint against each of the defendants, seeking an injunction to restrain infringement of patents Nos. 1,149,495 and 1,302,307, issued to George Campbell Carson, by assignment now held by plaintiffs, and praying an accounting of damages and profits.

Both patents relate to open hearth and reverberatory furnaces.

The first patent is entitled, "Improvements in Metallurgical Furnaces." The second is entitled, "Improvements in the Construction of Roofs of Open Hearth and Reverberatory Furnaces."

The questions involved herein are not new in this judicial circuit. The Carson patents were before the District Court for the Western District of Washington in the case of Carson v. American Smelting & Refining Company, and again before the District Court of Montana in the case of Carson Investment Company et al. v. Anaconda Copper Mining Company. In the former case, hereinafter referred to as the A. S. & R. Case, a decree was entered for defendant. Carson v. American Smelting & Refining Co. (D. C.) 293 F. 771.

The Circuit Court of Appeals reversed that decree and remanded the cause for further proceedings. Carson v. American Smelting & Refining Co. (C. C. A.) 4 F.(2d) 463.

Petition for writ of certiorari was denied by the Supreme Court. American Smelting & Refining Co. v. Carson, 269 U. S. 555, 46 S. Ct. 18, 70 L. Ed. 409.

Thereafter defendant filed in the Circuit Court of Appeals a motion to vacate the decree of the lower court, which was de-

nied, Carson v. American Smelting & Refining Co., 11 F.(2d) 764, and a petition for leave to apply to the District Court to file petition reopening the case. This petition was denied, Carson v. American Smelting & Refining Co. (C. C. A.) 11 F.(2d) 766, as was also a petition for a writ of certiorari, American Smelting & Refining Co. v. Carson, 273 U. S. 695, 47 S. Ct. 92, 71 L. Ed. 844.

In the case of Carson Investment Co. v. Anaconda Copper Mining Co., hereinafter referred to as the Anaconda Case, the District Court likewise entered a decree for the defendant, on the theory that the facts in that case which were not before the appellate court in the A. S. & R. Case called for and justified a conclusion different from that reached by the appellate court. Carson Investment Co. v. Anaconda Copper Mining Co. (D. C.) 17 F.(2d) 815.

The decree of the District Court was reversed, and the cause remanded, with directions to award injunction and to proceed in the usual manner to an accounting. Carson Investment Co. v. Anaconda Copper Mining Co. (C. C. A.) 26 F.(2d) 651.

A petition to the Supreme Court for a writ of certiorari was by that court denied October 22, 1928, 49 S. Ct. 32, 73 L. Ed. —.

After the Circuit Court of Appeals handed down its opinion in the Anaconda Case, counsel requested permission to submit supplemental briefs "bearing upon the question of to what extent, if any, that opinion should be given effect in the disposition of the instant cases." Permission was granted, and the last brief was filed September 8, 1928.

The trial consumed approximately 30 days. The record, consisting of the reporter's notes of testimony, depositions, patents, publications, and briefs, contains several thousand pages of printed and typewritten matter, to say nothing of maps, models, drawings, photographs, etc.; and of the voluminous records in the A. S. & R. and Anaconda Cases—which were furnished to the court for its information of what there transpired.

It is not my purpose to discuss at length the proofs herein or the legal questions involved. I must content myself with a comparison of the record in the instant cases with the records of the two earlier cases, and with stating briefly my conclusions.

It is undoubtedly true, as the defendants contend, that they are not bound nor estopped by the prior litigation, since they were not parties to, nor participants in, the defense thereof, and are entitled to have their respective rights determined strictly in accordance with the law and the facts as presented by them; but it is equally true that this court is bound by the opinion of the Circuit Court of Appeals of this circuit as to the validity of the patents in suit and as to the construction of the claims thereof, if based upon evidence substantially the same as in the instant cases. What effect, then, should be given to the legal proceedings involving the patents in suit, and what rule should be observed by this court in determining the issues involved in the instant cases? The answer is to be found in the opinion of the Circuit Court of Appeals in the Anaconda Case, where reference is made to the settled rule that, "when a patent has once been sustained by an appellate court, a subordinate court, dealing subsequently with the same patent, inquires first whether the second record contains anything not before the appellate court [whether mentioned in its opinion or not] in the prior litigation, and, if it finds something new, inquires next whether the new matter is of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, had it been advised of its existence."

This is not a new rule. It was recognized more than a quarter of a century ago as the settled rule to be followed in patent litigation, Badische v. Klipstein (C. C.) 125 F. 543, and has been consistently followed in the cases of Conley v. Thomas (D. C.) 204 F. 93; Flat Slabs Patents Co. v. Wright (D. C.) 283 F. 345; and in many other cases, including the recent case of Rousso v. Bank (D. C.) 19 F.(2d) 247.

It will thus be seen that our own Circuit Court of Appeals has announced the rule to be followed by District Courts in this circuit in cases involving the validity of the Carson patents.

In order to enable me properly to observe the above rule, it became necessary for me to study carefully, not only the pleadings and opinions in the A. S. & R. and Anaconda Cases, but also the entire records thereof, including the evidence, both oral and documentary, as well as the greater task of studying the voluminous record in the instant cases.

### A. S. & R. Case.

In this case the defendant claimed that the alleged inventions, described and claimed in the Carson patents, were invalid and

void because, prior to the alleged invention of Carson, said invention was shown, described, and patented in certain letters patents of the United States and foreign countries and in certain printed publications of the United States and foreign countries, to wit:

United States patent 113,584, Charles William Siemens; United States patent 729,614, Carl C. P. DeLaval; United States patent 870,326, Frank J. Tone; United States patent 871,477, Henry Louis Charles; British patent 2,413, Charles William Siemens; British patent 14,143, Frederick Siemens; Norwegian patent 11,857, Trollhattane Elektriska Kraftaktiebolag of Stockholm; Transactions of the American Institute of Mining Engineers, vol. 51, 1915, pp. 743, 744, and 750, Coal-Dust Fired Reverberatories at Washoe Reduction Works, by Louis V. Bender; Transactions of the American Institute of Mining Engineers, vol. 51, 1915, pp. 755, 759, and 760, Coal-Dust Reverberatory Furnaces of Canadian Copper Company.

The defendant further claimed that the said Carson letters patents were invalid and void, because, prior to the alleged invention or discovery thereof by Carson, said invention was known and had been publicly used by other persons in the United States at Butte, Mont.; Salt Lake, Utah; Midvale, Utah; Douglas, Ariz.; and Cananea, Mexico. There were other patents and publications set forth in defendant's answer, but no evidence was offered at the trial in connection therewith, except publications which appeared in the Engineering and Mining Journal of April 10, 1915, and October 24, 1924, respectively.

The court, after reviewing the facts of the case, held:

"That the Siemens British patents anticipated and render invalid the claim of the Carson patent, No. 1,149,495. * * *

"The claim of the plaintiff's first patent was anticipated by the prior art, and the claims of the second patent must rest upon the first patent, as 'the same inventive idea embodies the claims of both patents.' * * *

"There is no proof that there is any difference in the inventive concept underlying the apparatus and process in the two Carson patents and in the general principles specified and claimed in the Siemens patents. * * *

"From what has been said it is unnecessary to consider the effect of the disclaimers, or the Bender article, or further consid-er the divisional patent. In practical application and operation, in so far as it has relation to the tendered issue, the defendant has adopted the principle of the Siemens furnace and process of smelting." Carson v. American Smelting & Refining Co. (D. C.) 293 F. 771, 778, 779, 780.

## The Anaconda Case.

In this, as in the A. S. & R. Case, the defendant pleaded want of novelty, anticipation, and noninfringement. The record shows that the defendant introduced in evidence United States letters patent 113,-584, and British patents 2,413 and 14,143, introduced in the A. S. & R. Case, and in addition thereto the following:

British patent 594, Charles W. Siemens; British patent 3077, Charles W. Siemens; French patent 93,906, Charles W. Siemens; French patent 104,948, Charles W. Siemens; British patent 2395, Charles W. Siemens; British patent 1892, Charles W. Siemens; British patent 167, Charles W. Siemens; British patent 9429, Thomas Bell; United States patent 48,218, J. N. Snowdon and Henry Wilkins; United States patent 64,-260, Gideon O. Spence; United States patent 67,108, Clark Fisher; United States patent 843,776, Edward R. Taylor; Borchers' Electric Smelting, 1904, London; Engineering and Mining Journal, vol. 89, Jan.–June, New York, 1910; Engineering and Mining Journal, vol. 99, Jan.–June, New York, 1915; American Institute Mining Engineers, vol. 51, New York, 1915; Engineering and Mining Journal, vol. 52, July–December, New York, 1891; Mining and Scientific Press of San Francisco; Modern Copper Smelting; The Story of Oil; The Encyclopædia Britannica.

Also evidence of alleged prior uses at the following places: Montana Ore Purchasing Co. at Butte, Mont.; Anaconda Mining Co. at Anaconda, Mont.; Bingham Consolidated Smelting & Refining Company at Bingham Junction, Utah; Heinze Copper Co. at Butte, Mont.; The Copper King, Ltd., at Bay Point, Cal.; Lake Superior Smelting Company at Dollar Bay, Mich.; Mountain Copper Company at Keswick and Martinez, Cal.; American Smelting & Refining Company at Garfield, Utah; Garfield Smelting Company at Garfield, Utah; Peyton Chemical Works at Martinez, Cal; Consolidated Arizona Smelting Company at Humboldt, Ariz.; Colusa Parrot Mining & Smelting Company at Butte, Mont.; Arizona Copper Company at Clifton, Ariz.; and Boston &

Montana Consolidated Copper & Silver Mining Company at Butte, Mont.

The court held that Carson had been anticipated by disclosures in many patents to Siemens and others, and that "all these patents (referring to those mentioned in the opinion) illustrate and describe the process of furnace wall protection with ores"; that the claims of Siemens' 1866 patent and Carson's in essentials are alike; also that "public use of the process at Dollar Bay" had been established. The court also held that, if Carson's patents were valid, defendant had infringed.

As above stated, this decree was reversed. Carson v. Anaconda Copper Mining Co. (C. C. A.) 26 F.(2d) 651.

The decree in the A. S. & R. Case was also reversed. Carson v. American Smelting & Refining Co. (C. C. A.) 4 F.(2d) 463.

### The Instant Cases.

█ In the instant cases defendants have interposed defenses similar to those presented in the A. S. & R. and Anaconda Cases. They introduced in evidence all of the patents introduced in the A. S. & R. and Anaconda Cases, and in addition thereto the following:

United States patent 597,476, Wilson; United States patent 464,933, Bradley; United States patent 679,253, Cowles; Norwegian patent 11,857, United States patent 870,326, Tone; for electric furnaces.

Also numerous publications, and evidence of alleged public uses at various places, especially at Bay Point, Cal.; Martinez, Cal.; Dollar Bay, Mich.; Great Falls, Mont.; Butte, Mont.; and by the electric smelting furnace industry at various places.

They contend that the decrees and opinions above referred to "were predicated upon records wholly different from that presented in the instant cases, involving entirely different pleadings, issues, and proofs of anticipating defenses and infringements."

The evidence shows that the defendants have for many years been engaged in the business of mining and smelting copper ores in Arizona. Prior to the year 1916 all of their furnaces were center charged. During the years 1916 and 1917 certain of their furnaces were changed from center to side charging. Plaintiffs claim that this change was brought about as a result of the disclosures of the Carson patents, while the defendants contend that they and the copper industry in general adopted the side-charging structure and process solely on account of conditions existing at the individual plants and for advantages apparent but not real.

During the year 1925, after these suits were filed, the defendant Phelps Dodge Corporation remodeled certain of its furnaces to demonstrate the operativeness of the 60° angle walls, claiming that said furnaces as so remodeled were in accordance with the teachings and disclosures of the Siemens patents. Defendants also introduced in evidence the so-called Little Siemens or Anaconda furnace with 60° angle side walls for the same purpose. The evidence is conflicting as to whether such a furnace so constructed could be operated with continuous charging and with the maintenance at all times of a deep bath in the charging zone; but, be that as it may, the Circuit Court of Appeals in the Anaconda Case, passing upon this identical question, held: "We therefore conclude that the Anaconda furnace, with its side walls inclined at an angle of 60°, does not embody the Siemens disclosure."

This holding, based not only upon the evidence in the Anaconda Case but also upon the construction of the patents themselves, precludes the idea that a furnace constructed with 60° angle side walls is a Siemens furnace or that it anticipated Carson. Therefore, giving due consideration to defendants' testimony with reference to the furnaces constructed with 60° angle side walls, and assuming that such structures may not be classed as an experiment, as claimed by plaintiffs' counsel (having been constructed after the suit was instituted), I am forced to the conclusion that they do not demonstrate the operativeness of the Siemens furnace nor establish the invalidity of the Carson patents, or that the latter were anticipated by the former.

The defendants have introduced a vast amount of evidence, both oral and documentary, to show the invalidity of the Carson patents, and to establish the contention that those patents were anticipated by Siemens and others. All of said evidence has received the utmost consideration. Much of the same testimony presented in the Anaconda Case was presented here. This is true, not only regarding the patents and other documentary evidence, but also regarding the oral testimony of metallurgists, operatives, and others. Approximately twenty-five of the witnesses examined in the Anaconda Case were examined here. There were, of course, additional witnesses called in the instant cases and additional evidence

introduced, but, in my opinion, the additional evidence, even if not cumulative, is not sufficient to show any real substantial difference between the record in the Anaconda Case and the instant cases, and I cannot conclude that "the new matter is of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, had it been advised of its existence."

Dr. Handy, one of defendants' expert witnesses, gave testimony in the Anaconda Case with reference to the Siemens and other patents and the so-called Little Siemens or Anaconda furnace. His testimony there was substantially as given here, and his testimony given here is substantially the same as the evidence given here by other expert witnesses who testified for the defendants.

The evidence shows that none of the experts who testified in the instant cases had ever heard or read of the Siemens patents prior to the time Carson filed his application and disclosed his invention, and it is significant that following such disclosure the great copper industry almost universally changed their furnaces from center to side charging.

The contention that Carson's structure and his method were old in the art and anticipated by Siemens and others is not convincing. No one cares to detract in the least from the fame or accomplishments of Charles William Siemens, but I am not convinced that he himself ever believed that he had solved the problem of protection of the walls of a reverberatory furnace from the destructive heat of the furnace and the chemical action of the bath by the method of side charging as Carson's apparently has done.

The difference between Carson's and Siemens' inventions, in so far as the particular structure and process under consideration are concerned, may be likened to the difference between success and failure. Siemens' process was never put into actual practice, and seems never to have been recognized by the iron and steel world as a forward step in the art or worthy of serious tests or experimentations.

After a careful consideration of the opinions of the Circuit Court of Appeals and the record herein, I have reached the conclusion that the Carson patents are valid patents, and that no patents pleaded and testified to contain the original and novel features of his patents.

The defense of prior use of the Carson invention in reverberatory furnaces at Dollar Bay, Mich., was before the Circuit Court of Appeals in the A. S. & R. Case and also in the Anaconda Case. In view of the conclusions reached by that court and of the fact that there is no substantial difference as to the alleged use at Dollar Bay in the records of the A. S. & R. and Anaconda Cases and the record of the instant cases, I conclude that the prior use at Dollar Bay as pleaded by the defendants here has not been established.

In the Anaconda Case the court said:

"Based upon the evidence by affidavit and counter affidavit before us in support of the application to reopen the A. S. & R. Case, our former decision was that there was no proof that any person other than Carson ever conceived the idea of dispensing with fettling by banking the ore against the furnace sides, and, furthermore, that even if other furnaces were, in fact, operated in the manner asserted by the A. S. & R. Company, it must have been done 'without any conception of the inventive idea' which underlies the Carson patent. * * *

"Anticipation must be proven by evidence so cogent as to leave no reasonable doubt in the minds of the court, and, if the evidence in support of the issue fail to measure up to that standard, the law will not uphold a conclusion that prior use has been proven." Carson Investment Co. v. Anaconda Copper Mining Co. (C. C. A.) 26 F.(2d) 651, 660, 661.

The evidence with reference to the other alleged public uses at various places is not convincing, and I agree with Judge Bourquin's conclusion that, if the use at Dollar Bay has not been proven, the others have not.

Another defense strenuously urged upon the court is Carson's alleged false representations to the Patent Office. This defense likewise was definitely disposed of by the Circuit Court of Appeals in the Anaconda Case. Practically all of the evidence with reference thereto was documentary in character and before the appellate court for its inspection. There is absolutely nothing in the record of the instant cases which would justify me in arriving at a different conclusion.

I am convinced that the side-charging method as disclosed by Carson presents real advantages over the old method of center charging, but to what extent need not now be determined. It is my opinion that the defendants have not only infringed the

process claim of the Carson patent but the apparatus claim as well.

A decree may be drawn for the plaintiffs.