## TURNER v. QUINCY MARKET COLD STORAGE & WAREHOUSE CO.

(Circuit Court of Appeals, First Circuit. June 18, 1915.
Rehearing Denied September 9, 1915.)

No. 1098.

1. PATENTS ⬤◌328—SUBJECTS OF PATENTS—"MANUFACTURE"—CONCRETE BUILDING CONSTRUCTION.

The Turner patent, No. 985,119, for an improvement in steel skeleton concrete construction in structures erected at least in part of reinforced concrete, is for a "manufacture," within the meaning of the patent law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manufacture.]

2. PATENTS ⬤◌266—INFRINGEMENT—"USER" OF INVENTION.

A tenant, occupying under lease a building the construction of which embodies such a patented feature, is not necessarily a "user" of the invention, in such sense as to be an infringer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 410; Dec. Dig. ⬤◌266.]

Bingham, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by Claude A. P. Turner against the Quincy Market Cold Storage & Warehouse Company. Decree for defendant, and complainant appeals. Affirmed.

Charles J. Williamson, of Washington, D. C., for appellant.

Oliver Mitchell, of Boston, Mass. (William D. Turner, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. [1] This is an appeal from the judgment of the District Court dismissing a bill in equity, alleging an infringement of letters patent issued on February 21, 1911, No. 985,119, said to be for an "improvement in steel skeleton concrete construc-

tion." The patent contains a number of claims, but one claim, as follows, illustrates all of them for the purpose of this opinion:

"3. In flat slab and column construction of concrete, the combination of column reinforcement composed of connected angle bars extending vertically therethrough, a wide spreading cantilever head extending into the slab beyond the column formed of crossed rods, supplemental vertical slab and column-reinforcing rods ending in outwardly bent portions at the column top; and slab reinforcement formed of rods extending in different directions crosswise of the column heads."

There seems to be some doubt about the meaning of the word "construction" in this claim, because it is queried whether or not it applies to an art or a process. There is no doubt that it applies only to what was in fact constructed and what is said to be "manufacture." Also there is no doubt that the invention covers only parts of the solid mass of the building.

The complaint made against the respondent below is that he had used, and now is using, the structure wherein the invention in question is embodied, as a tenant under. lease, and that the structure was completed by the owners and builders prior to August 1, 1909, when the respondent went into occupation; and, not only this, but that the builders of the structure incorporated into it the patented improvements before the issue of the patent, and that the respondent has never practiced the art covered by the patent, but has merely occupied the completed structure as tenant under lease, and that such mere occupation, beginning as it did subsequent to the issue of the patent, was not invading the patentee's rights. Of course, the fact that the patent was not issued until after the tenant took possession bars any possibility of a claim against him for anything transpiring before he took possession, so that the only question is whether under the circumstances mere occupation as a tenant after the issue of the patent renders the respondent liable as an infringer. The learned judge of the District Court, however, expressed the following opinion:

"If the patentee had unequivocally claimed a new kind of building as his invention, I should be obliged to hold the subject-matter of the patent not a 'manufacture' and not within the classes of things patentable by law; following, among the recent decisions dealing with the question here involved, American, etc., Co. v. Arnaelsteen, 182 Fed. 324, 105 C. C. A. 40, in which the Court of Appeals for the Ninth Circuit so held with regard to a patent for an 'apartment house with disappearing bed,' rather than anything to the contrary in Riter-Conly Co. v. Aiken, 203 Fed. 699, 121 C. C. A. 655, or International Mausoleum Co. v. Sievert, 213 Fed. 225, 129 C. C. A. 569. In the first of the two last-mentioned cases, the Court of Appeals in the Third Circuit upheld a patent for a 'roof structure'; in the second, the Court of Appeals for the Sixth Circuit upheld a patent for a 'burial crypt,' and from neither decision does it seem necessarily to follow that a ten-story building may be patented as a 'manufacture.'"

The opinion continued as follows:

"It seems to me entirely clear that invention of what is thus pointed out cannot make the patentee the inventor of a new kind of building, entitled to claim the whole structure wherein it has been employed as covered by the patent, and entitled to treat every occupant as an infringing user of his invention. No one, in my opinion, can be regarded as having infringed such a patent who has had nothing to do with the employment of the patented method in putting up the building."

Of course, the patentee in this case, as against the respondent, must establish an "exclusive right to make, use and vend the invention or discovery," or one of them, within the jurisdiction for the time named in the patent statute. It seems to be the impression of the learned judge in the District Court in this case that a construction like that involved here belongs to the domain of architecture, rather than that of "manufacture." "Manufacture," however, is a very broad word, which it is not safe to attempt to limit in a general way. International Mausoleum Co. v. Sievert, 213 Fed. 225, 129 C. C. A. 569, decided by the Circuit Court of Appeals for the Sixth Circuit, on March 3, 1914, extended the word "manufacture" to the construction of a mausoleum, having all the features of an architectural building, with hallway or lobby, crypt, and a room in the hallway for accommodation in case of stormy weather. At pages 228 and 229 of 213 Fed., at page 569 of 129 C. C. A., the opinion, which was by a strong court, examined the prior decisions, and limited or qualified them, going even so far as to cover in its observations Jacobs v. Baker, 7 Wall. 295, 19 L. Ed. 200, and Fond du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714. This must be accepted as broadening out the prior decisions on this topic, especially demonstrating that no rigid rule can be accepted.

In the present case it must be conceded that the portions of the building in question exhibit marked improvements, which, in the case of mere additions to a building having prior existence, would be clearly of a patentable character.

[2] The invention was said to relate "to buildings or structures erected of reinforced concrete, and its object to provide an arrangement of reinforcement for column and slab or floor construction." It then proceeds with further details showing that the patentee had in mind the construction of a building with the patented features as a part thereof; but what was erected in the present case was an entire building. There is no allegation that the respondent made any special or independent use of any part of the building, or is the owner of any part thereof. For example, it is not stated that he in any way repaired any part of the building, or added thereto, or took therefrom, or that the doors or windows, or any movable part of the building, had any patented feature, or that the tenant made use of any such movable parts, or in any way manipulated any portion of the structure. There was not any use by him of the patented features of the structure in any popular sense of the word. He would ordinarily be said to have occupied the premises, or to have rented them; but never in any ordinary sense would he be said to have used them. This is not, therefore, like the well-known case of a person occupying a house or grounds, who manipulated a patented driven well on the premises, or who in any way manipulated, moved, or otherwise actuated any separate portion thereof. In stating our result of this case, we have all these features in mind, and do not wish to confuse it with any case in which, in the ordinary sense, a person charged with infringement can be said to have constructed, or owned, or manipulated any part of any feature embraced or covered by any patented invention. The respondent merely occupied the building, and, so far as the proofs show,

in no way concerned himself, and in no way interfered, with any of the columns, slabs, or floor constructions, or other details thereof.

Under the circumstances, we find no specific, illustrative authority aiding us in a conclusion of the case, either in Curtis, Walker, or in the English work of Edmunds, or in judicial decisions. All we find from any authoritative source, bearing upon the precise case, is an observation of a general character, made in 3 Robinson on Patents (1890) 55, as follows:

"Thus, when a patented invention is inseparably annexed to other property without permission of the patentee, any one who owns, or uses, or buys, or sells, or leases such property, either as principal or agent, is guilty of infringement. But if the interest of the alleged participant is not dependent on the invention, though casually enhanced by its wrongful use, the enjoyment of such interest is not infringement."

What is thus described by Robinson is precisely the case here. The respondent neither owns, nor uses, nor buys, nor sells the property in question, or any part of it. He only leases in the manner we have described, and in leasing he has no peculiar or special interest in the patented parts, although his occupation is casually enhanced by them. Therefore the case is precisely within the quotation which we have made. The writer, however, cites no authorities sustaining his proposition in the form in which put, or so far as appertains to this case. The authorities he cites are only incidental, and are not one way or the other clearly marked for the purposes to which our opinion relates. We are therefore left to solve the case in a general light, with the practical application of statutes in reference to patents. In applying this, we must be careful to remember that no rule must be laid down of a general character which will unjustly shield unlawful infringements, and that we have no view beyond the precise case with the circumstances to which we have referred, and no intention that our conclusion shall be applied farther than concerns that precise case. On the other hand, it is absurd to lay down a rule which would render one of dozens or hundreds of tenants of these modern great buildings liable for infringement, because some part of the building involved some patented feature; and it is impossible to draw a specific line of distinction between a case of that character and the one at bar.

It is possible that we could find some support for our conclusions in the Circuit Court of Appeals opinion for the Eighth Circuit, in Turner v. Moore, 211 Fed. 466, 128 C. C. A. 138; but, if we should follow that case, the result would not be substantially different than what we have reached. Therefore we have not endeavored to sift it out and apply it.

The judgment of the District Court is affirmed, and the appellee recovers its cost of appeal.

BINGHAM, Circuit Judge (dissenting). I agree with the opinion of the court that the patent in question is for a manufacture or product, and not for a process; but I am unable to agree that the use made by the defendant of the patented structure does not constitute infringement. The defendant is a tenant, under a lease, of a building in the construction of which the structure embodying the patent has been in-

corporated as an integral part. It occupies the entire building as a cold storage warehouse, and not any particular division or part thereof; and the structure of the patent constitutes the columns and floors of the building. In the District Court the contention of the defendant was that the patent was for a process, and that, inasmuch as it had had nothing to do with the erection of the building, but simply occupied it as tenant under a lease, its occupancy could not constitute infringement. It was practically conceded that, if the patent was for a product, the use made of the building by the defendant infringed.

Now, according to the language of the statute, a patented invention may be infringed by either making, using, or selling it without the permission or license of the patentee; but, in the opinion of the court, the meaning of the word "use," as applied to a patent for a product, is limited by restricting its application to products capable of manipulation, and, while it holds that a building, or a structure constituting a substantial part of a building, and which is not capable of manipulation, may be the subject-matter of an invention, it denies that the patentee's right in such a product can be infringed in any way other than by making or selling the patented structure. This results in reading the word "use" out of the statute so far as a patented structure of an immovable character is concerned.

In Robinson on Patents, vol. 3, p. 55, the author states:

"An infringement may be committed either by making, using or selling a patented invention. The words, however, are interpreted as comprehending every method by which an invention can be made available for the benefit of the infringer, and any person who participates in any wrongful appropriation of the invention becomes thereby a violator of the rights protected by the patent. Such participation may be direct or indirect; it is sufficient if it permits in any degree the unauthorized manufacture, use, or sale of the invention."

Here the defendant, by occupying the building in carrying on its business, of necessity makes use of the floors and columns of the patented structure. The use is direct, not indirect, and there is a plain case of infringement.

Entertaining these views, it seems to me the case should be sent back to the District Court for trial on the merits.