### TAIGMAN v. DESURE et al.

(Circuit Court of Appeals, Second Circuit. March 13, 1918. On Application for Reargument, April 12, 1918.)

No. 75.

1. PATENTS ⬦327—VALIDITY—CONCLUSIVENESS OF DECREE—PERSONS CONCLUDED.

One not a party to an infringement suit, and not technically a privy thereto, although allied in interest with defendant, is not bound by a decree affirming the validity of the patent alleged to have been infringed.

2. PATENTS ⬦328—INVENTION—ANTICIPATION.

Patent No. 984,327, claims 15 and 16, for a motor-control apparatus, which serves to exactly control the operation of electric motors, to start and stop the same, or to vary the speed, and patent No. 1,044,944, claim 3, for a pulley brake for motor-controlled apparatus, particularly adapted for a brake mechanism on a motor-actuated sewing machine, held to show invention, and not to have been anticipated.

3. PATENTS ⬦81—INFRINGEMENT SUIT—PRIOR USE.

Defendant, who admitted infringement of a patent, otherwise valid, and defended on the ground of prior public use, has the burden of establishing such use beyond a reasonable doubt.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PATENTS ☞81—INFRINGEMENT—PRIOR USE—EVIDENCE.
> In a suit for the infringement of patent No. 984,327, claims 15 and 16, and patent No. 1,044,944, claim 3, evidence *held* insufficient to sustain the defense of prior public use.

Appeal from the District Court of the United States for the Southern District of New York.

Bill by Max Taigman against Samuel Desure, trading as D. & D. Electric Company, and another. From a decree for complainant, holding the first patent valid and infringed, and dismissing the bill for infringement as to the second patent, the parties cross-appeal. Decree sustaining the first patent, and holding it infringed, affirmed, and decree dismissing bill for infringement of the second patent reversed, and cause remanded, with directions.

The plaintiff alleges that he is the owner of an undivided two-thirds interest in letters patent No. 984,327, issued to David Wald, Otto C. Britsch, and the plaintiff on February 14, 1911: the plaintiff's two-thirds interest in the latter patent being his own individual one-third interest arising from the grant of the patent, together with the interest of Britsch, which plaintiff acquired by assignment. He also alleges that he is the sole owner of United States letters patent No. 1,044,944, granted to him on November 19, 1912. The defendant Wald, as the owner of a one-third interest in letters patent 984,327, was requested by plaintiff to join in the suit, and, having failed to do so, was made a defendant.

The suit was brought for infringement of both patents. An injunction and accounting was asked. A decree was entered in favor of the plaintiff, holding the first patent valid and infringed as to the claims in issue, and dismissing the bill for infringement of claim 3 of the second patent, without costs. There are cross-appeals.

C. P. Goepel, of New York City, for appellants.
Hillary C. Messimer, of New York City, for appellee.
Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The first patent in suit, No. 984,327, is for a motor-control apparatus, and has reference more particularly to apparatus of this class which serves to exactly control the operation of electric motors, to start and stop the same, or to vary the speed. The second patent in suit, No. 1,044,944, is for a pulley brake for motor-controlled apparatus, and is particularly adapted for a brake mechanism on a motor-actuated sewing machine. These two patents were before this court in Taigman v. Forsberg, 223 Fed. 787, 139 C. C. A. 607. We then held that the patents disclosed invention and were not shown to have been anticipated.

[1, 2] In this suit defendant Desure relies on additional proof as to prior public use. He also sets up in his answer a number of patents which are prior in time to those in suit, although at the trial, among all of those pleaded, he relied upon only two—the Miller & Marx patent, No. 703,942, dated July 1, 1902; and the Beswick patent, No. 828,-083, dated August 7, 1906. The District Judge has entered a decree in favor of the plaintiff, in which the first patent is held valid and infringed as to the claims in issue, with costs, and the bill for the infringement of claim 3 of the second patent is dismissed, without costs.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the course of his opinion the District Judge, in referring to the opinion of this court when the case was here before, declares that "subsequent events have proved that the Circuit Court of Appeals was right in its conclusion as to the facts." In the former action we reversed the decree of the District Court, because we were convinced that the testimony was not sufficient to establish the fact that the inventions of the patents were in public use more than two years before the patents were granted. It was this alleged public use that the defendant in the first case had relied on to defeat the plaintiff's suit. A number of patents had been set up in the answer in the former suit, but no reference was made to any one of them by the defendant at the trial.

In the present suit the defendant did not elect to stand entirely on the alleged prior use. While relying on the prior use, he does not now deem it safe to pass unnoticed the patents of the prior art. Both of the patents now relied upon were cited in the answer in the first suit, although counsel did not then deem it important to offer them in evidence. Both were before the Patent Office at the time the patents in suit were granted. Furthermore, the Miller & Marx patent is on the Diehl box, now obsolete, and the Beswick patent is on the Beswick box, which is also now obsolete.

The plaintiff relies on claims 15 and 16 of the first patent, No. 984,327, and on claim 3 of the second patent, No. 1,044,944. Claim 15 of the first patent reads as follows:

"In apparatus of the class described, a casing having an end wall provided with an opening therein, resistances within said casing, contacts within said casing and electrically connected with said resistances, said end wall adjacent to said opening having an enlargement, presenting a bore, a spindle in said bore, and a contact arm having a hub mounted upon said spindle, and extending through said opening into said casing, and adapted to engage said contacts."

And claim 16 of the first patent reads as follows:

"In apparatus of the class described, a casing having an end wall provided with an opening therein, resistances within said casing, contacts within said casing and electrically connected with said resistances, said end wall adjacent to said opening having an enlargement, presenting a bore, a contact arm having a hub mounted upon said spindle and extending through said opening into said casing and adapted to engage said contacts, said arm, at the outside of said casing having an extension, a lever pivotally mounted upon said casing and operatively engaged by said extension of said arm, and a brake shoe carried by said lever and adapted to brake a motor controlled by the apparatus."

Claim 3 of the second patent reads as follows:

"The combination in a motor-controlled apparatus, of a revolving element, a switch arm, a brake lever having a brake shoe at one end adapted to engage said element and having its other end loosely positioned in and actuated by said arm, and means independent of said switch arm for varying the movement of said shoe relative to said element."

It is noted that paragraph 8 in the answer in this suit, which names certain patents issued prior to the patents in suit and asserts that the apparatus of the patents in suit and the apparatus of the prior patents so named are substantially identical in character, is a mere repetition of paragraph 8 in the answer in the former suit. Desure was not a party

in form at least to that suit, and it has not been proved that he was technically a privy to it, although he was allied in interest with the defendant therein. The decision in that case is not conclusive as against him. It is proper, however, to say, and good practice requires us to hold, that this belated reliance upon references which were pleaded in the former suit is not to be viewed with favor; for upon pleadings that presented the issues we have definitely held that both these patents reveal invention.

An examination of the physical exhibits discloses the fact that defendant's box is a Chinese copy of that of the plaintiff. The defendant's device is identical with that of the plaintiff, and has all the properties which are ascribed to the latter in his two patents in suit. Infringement is clear, and is not contested. The question presented is whether the plaintiff's patents are valid. Is there anything in the prior art or in the prior use which invalidates them?

The patents in suit describe a device for the control of individual sewing machines operated by an electric motor. It consists of an ordinary rheostat inclosed in a box, operated by a lever which, when released, allows a spring to relax, which brings a brake into action. The rheostat has been said to be as old as applied electricity. It is necessary in order that the current may be gradually applied, by forcing the current to traverse several electrical resistances before the direct contact or circuit is made. The brake is also old, and used to stop the machine quickly, rather than to permit it to idle down.

It will not be necessary to refer to more than four of the patents relied on by the defense. The Miller and Marx patent, No. 703,942, of July 1, 1902, and the Beswick patent, No. 828,083, of August 7, 1906, were mentioned in the answer and so may be relied upon as anticipations. The Bradbury patent, No. 17,460, is a British patent, which was applied for on August 8, 1902, and was accepted on August 8, 1903. It was not named in the answer, and was therefore received in evidence only as illustrating the prior art.

The Miller and Marx patent, No. 703,942, was issued on July 1, 1902, or almost nine years prior to the patent in suit. It is described as an invention which had for its object to provide an efficient electric motor power-transmitting device, more especially intended to be applied to sewing machine stands or tables, for the purpose of driving the sewing machines mounted thereon. The defendant claims that the device is identical in functional operation with that of the patent in suit. The Miller and Marx patent and the patent in suit both employ a box or casing having what is known as an electric rheostat having resistances to determine the strength of the electric current, and a pivoted contact arm passing over the contact points electrically connected with the various resistances. When the contact arm is in one of its extreme positions, no electric current flows, as the circuit is broken; and when the contact arm is in its other extreme position, the entire current may pass, as it does not flow through any portion of the resistance. Between these extreme positions, the pivoted arm engages contacts connected with resistances so graduated that, as the contact arm is moved from one extreme position to the other, the current pass-

ing through the circuit is increased or decreased. By moving the contact arm over the contacts, sufficient strength of current may be utilized, and, when a motor is connected in the circuit, the speed of the motor depends on the strength of the current; and it also provides a brake shoe. The Diehl box was made under this patent. This box was never sold separately from the motors. In the Diehl box the lever arm is pivoted to the cover, instead of to the base, with the result that, when the cover was removed for repairs the integrity of the box was destroyed. Then, again, the pivot point of the controller arm is inside of the box, which renders it necessary to leave an open slot in the end of the box, to permit the travel of the end of the contact arm.

The Beswick patent, No. 828,083, was granted August 7, 1906. It was for an invention designed to provide a compact portable attachment, which would be complete, self-contained, and capable of being readily set up and connected "to drive a sewing machine, polishing wheel, small lathe, or the like, and which will further serve when in position as a support for the table or bench upon which the machine is mounted." The Beswick box manufactured under this patent like the Diehl box, was never sold separately from the motor, and it could not be used, even with a Beswick motor, without the complete combination, including a metal frame cast for the purpose; and in the Beswick box, as in the Diehl box, the pivot point of the controller arm is inside the box.

The material difference between the starting boxes of the prior art and Taigman's box is the arrangement of the latter and the co-ordination of parts produced within a narrow compass in a container adapted for any kind of a machine on any kind of a stand. The Taigman box worked on all kinds of motors, and superseded both the Diehl box and the Beswick box. The record establishes the fact that Taigman was the first to give to the public a successful starting box for sewing machine motors, which was a unit complete in itself, adapted for attachment to any sewing machine stand, and for use in any sewing machine motor; and in the Taigman box the objectionable features previously pointed out in the Diehl and Beswick boxes have been overcome. The cover is removable without disturbing the integrity of the structure. The contact or controller arm is pivoted in one of the end walls, so that no open space is required for the movement of the projecting end of the arm, and there is no danger that sparks will escape therefrom. And it is very important that no sparks should escape from the control box, as they might readily set fire to the dress of the operators or the material upon which they were at work.

Claims 15 and 16 of the first patent require the contact arm to be pivoted in the end walls of the structure. That this might be accomplished it was necessary to enlarge the end wall near the opening for the reception of the contact arm, so that the spindle forming the pivot for the arm might be accommodated; and this feature of the device is not disclosed in the prior art.

As respects claim 3 of the second patent, the Miller and Marx patent does not disclose any brake. The Beswick patent shows a brake, but one mounted entirely separate from the starting box, and not form-

ing a part of the immediate combination. In the British patent we find a brake, and the brake and the control elements form a unit. But they are adapted for use on top of the sewing machine stand, and are intended to be operated by hand. The brake in this patent is supposed to operate on the fly wheel of the sewing machine rather than on the pulley of the motor. It is not intended to be connected with the treadle of the motor, and no means are shown for adjusting the brake.

The Wald, Britsch, and Taigman patent, No. 1,000,864, of August 15, 1911, was admitted, not as constituting a part of the prior art as to the first patent in suit, for it was not filed until April 15, 1911, but as against the second patent. Figure 8 of patent No. 1,000,864 discloses claim 3 of the second patent in suit, and the file wrapper of patent No. 1,000,864 shows that this feature was claimed in original claims 9 and 10 of the application. It appears, however, that before the patent was issued these two claims were canceled; and when the plaintiff made his application for the second patent in suit it was rejected on the Wald, Britsch, and Taigman patent, No. 1,000,864. The plaintiff thereupon filed an affidavit that he was the sole inventor of the device set forth in claim 3, and that it had been included in the former application by mistake, and Wald and Britsch also at the same time filed affidavits disclaiming the invention of claim 3 of the second patent in suit, or any part thereof.

It is plain that under the circumstances the disclosure made in connection with patent No. 1,000,864 cannot be used to invalidate claim 3 of the second patent in suit. Application for patent No. 1,000,864 was filed April 15, 1911, and application for the second patent in suit was filed April 3, 1912.

On the whole record, we hold that what Taigman did shows invention. He accomplished something which the prior patentees failed to accomplish, and contributed a practical advance to the art, which, though it may be slight, is sufficient to entitle him to maintain the validity of both patents, unless it appears that they are invalidated by prior use.

[3, 4] Several witnesses were called to show that, more than two years prior to the grant of the first of the patents in suit, the Taigman box was in public use. But the testimony upon which defendant relies to establish such use is not convincing or impressive. Such testimony was introduced in the first suit, and was regarded by this court as insufficient and too uncertain to establish the invalidity of the patent. In the present suit the defendant has called more witnesses than in the former suit, but their testimony remains open to the same objection. The witness Wald, called by the plaintiff, is mentioned in the opinion of the District Judge, who heard him give his testimony, as an "honorable, upright, and scrupulous" man, who impressed him most favorably. Wald, who was one of the original patentees of the first of the patents in suit, and should have known the truth as to any prior use, was asked: "Mr. Wald, have you any knowledge of the invention, which is the subject of the patent in which you are one of the joint patentees, having been sold, or publicly used, more than two years before you filed your application for that patent?" To which he an-

swered: "Not to my knowledge." The witness stated that neither directly nor indirectly did he have any financial interest in the patent at any time.

The District Judge, mindful of the criticism which the failure to call him in the first trial had called forth, expressed a desire to hear what the plaintiff, if he were available, could say on the subject of the prior use. His counsel thereupon stated that he was available, but that he was a man who did not thoroughly understand English, and that he was of a very excitable temperament, and that, as his business had been seriously interfered with by the acts of the infringers, if called to testify it was likely to excite him to a high degree. The District Judge stated that in the interest of winding up the litigation he thought it desirable to have him in court to be interrogated by the court as to the prior use. He accordingly appeared as a witness and was questioned by the District Judge. He stated that he had sold starting boxes prior to 1909, as he had all kinds of boxes, but that he had not sold any boxes like his patent prior to 1909, as his box had not been completed prior thereto.

Freedman, who was called by the defendant, testified also in the first suit, and we characterized his testimony in that suit as unreliable and improbable. In the present suit his testimony makes an equally unfavorable impression. The District Judge states that his present testimony "was absolutely unreliable," and states that he is convinced that he was trying to tell the truth, but that he had met with an injury which had gravely affected his memory. Desure, who also testified in the first suit, testified in this, and we characterized his former testimony as "loose," and pointed out why his testimony could not be accepted as establishing the prior use. That, of course, has no bearing upon his testimony in the present suit, with which we are now solely concerned. His testimony in this case on the direct is very brief. He states that he bought four starting boxes from Taigman in May, 1907, and that they were exactly like one of the exhibits which was asserted to be a Taigman box. But, after stating it was "exactly" the same as that box, he added: "The top was a little more straight. I cannot recollect whether this had a piece of wire, or had that thing in there (indicating)." Counsel for plaintiff did not deem his testimony of sufficient importance to cross-examine him upon how nearly the two boxes corresponded. In this he was contradicted by Taigman, who testified positively that his box was not completed until 1909. It could not, therefore, have been given away or sold prior to that time, if Taigman told the truth, and his testimony impresses us as that of a truthful man. As to the testimony of certain other witnesses, who thought they had Taigman boxes in 1907, the District Judge was far from satisfied that their memory was sufficiently reliable for the purpose of fixing dates which would defeat the patent.

The burden was upon defendant to establish prior public use and to establish it by proof beyond a reasonable doubt. This in our opinion defendant has not done. While we are not prepared to go quite so far as the District Judge went, and say that the prior uses were affirmatively disproved to our entire satisfaction, we think that the testimony

as to prior use is not sufficient to establish the fact beyond a reasonable doubt, which is what the law requires in such cases.

As respects claim 3 of the second patent, the lower court has held the prior use clearly established. In this view of the matter this court is unable to concur. In our opinion, the burden of proof has no more been sustained by the defense as respects the second patent than it was as to the first, either as to the exact mechanism of the device or as to its having been in prior use for the statutory period. So far as the proof is concerned, we are unable to see any difference between the use under the first patent and the use under the second. The one seems to us to be as good as the other.

The decree is therefore affirmed, with costs, in so far as it holds claims 15 and 16 of the first patent valid and infringed. It is reversed, with costs, in so far as it dismisses the bill for infringement of claim 3 of the second patent.

## On Application for Reargument.

.PER CURIAM. Defendant having contended that the second patent in suit (1,044,944) is anticipated by the prior Wald patent (1,000,-864), and it appearing that the file wrapper and contents of said second patent in suit should in our opinion be put in evidence herein, as being material and relevant to said contention, it is ordered that the mandate herein contain the following directions:

Let the decree below as to the second patent in suit be vacated, and the issue as to that patent be remanded, with directions to reconsider said second patent, but only as to the anticipation alleged by said Wald patent; the court below, having considered the evidence offered in respect of such alleged anticipation, to make such final decree as to the validity and infringement of said second patent in suit as to law and justice may appertain.

Neither party shall recover costs in this court, costs below to be in the discretion of the District Court, and the directions as to costs, heretofore given, are modified accordingly.