## FLAT SLABS PATENTS CO. v. WRIGHT, BARRETT & STILWELL CO.

(District Court, D. Minnesota, Fourth Division. August 12, 1920.)

1. Patents ⊗◯327—One not a party to infringement suit or participating in defense not bound by decree.

One who was not a party to a patent infringement suit and not a participant in the defense thereof is not bound by the decree adjudging the patent valid and infringed.

2. Patents ⊗◯327—Decree of Circuit Court of Appeals followed in District Court in suit against stranger on substantially the same evidence.

Even as against a stranger to a patent infringement suit, the District Court will, on the same evidence, or substantially the same evidence, follow the decision of the Circuit Court of Appeals in a suit against other parties.

3. Patents ⊗◯327—Scope of inquiry in District Court, after decision by appellate court sustaining patent in another case, stated.

When a patent has once been sustained by an appellate court, a subordinate court dealing with the same patent subsequently inquires whether the second record contains anything not before the appellate court, and, if so, whether it is of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, if advised of its existence.

4. Patents ⊗◯328—698,542, for monolithic flooring, not anticipated and infringed.

Claims 1, 3, and 4 of the Norcross patent, No. 698,542, for reinforced concrete flat slab monolithic flooring, held not anticipated, and infringed by floorings built in accordance with the Turner patents, Nos. 985,119 and 1,003,384.

5. Patents ⊗◯287—Use of building in which infringing structure used held an infringement.

Where a patent for monolithic concrete flooring was infringed in the erection of a building, the use of the building as owner and occupier after its construction constituted infringement.

In Equity. Suit by the Flat Slabs Patents Company against the Wright, Barrett & Stilwell Company. Decree for plaintiff.

Amasa C. Paul, of Minneapolis, Minn., for plaintiff.
Frank A. Whiteley, of Minneapolis, Minn., for defendant.

BOOTH, District Judge. This is a suit for injunction and for an accounting because of alleged infringement of claims 1, 3, and 4, Norcross patent, No. 698,542, April 29, 1902, covering a certain type of reinforced concrete flat slab monolithic flooring. Since the commencement of the suit the patent has expired, so that the remedy by injunction is no longer available. The defenses interposed are invalidity of the patent for lack of invention in view of the prior art; also non-infringement of said patent by the defendant, who is the owner and user of a building in which it is claimed the alleged type of flooring is constructed.

It is admitted that the alleged infringing structures, to wit, floorings of the defendant, were built in accordance with designs and plans furnished by C. A. P. Turner, and that the said floorings are in accordance with Turner patents, No. 985,119 and No. 1,003,384. The Norcross and Turner patents have been before the courts in a number of suits. Of special interest here are: Drum v. Turner, 219 Fed. 188, 135 C. C.

⊗◯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A. 74; Turner v. Lauter Piano Co. (D. C.) 236 Fed. 252; Turner v. Lauter Piano Co., 248 Fed. 930, 161 C. C. A. 48.

Drum v. Turner was the basic suit in the contest between the Norcross and Turner patents, and the present suit harks back to that. In Drum v. Turner it was held by the Circuit Court of Appeals of this circuit: (1) That claims 1, 3, and 4 of Norcross, No. 698,542, were valid; (2) that said claims were infringed by floorings constructed in the way described in Turner, Nos. 985,119 and 1,003,384.

[1, 2] The defendant in the present suit is not bound by the decree in Drum v. Turner, since it was not a party to that suit, nor a participant in defense thereof. Nevertheless this court would, upon the same evidence, or substantially the same evidence, follow the decision in Drum v. Turner, even as to a stranger to that suit. But the defendant in the present suit contends that the evidence now before this court is very different from the evidence in Drum v. Turner, and that, if the evidence now before this court had been before the Circuit Court of Appeals in Drum v. Turner, that court would have held the Norcross patent invalid.

[3] The rule governing situations of this kind is well stated in Badische Anilin, etc., v. Klipstein (C. C.) 125 Fed. 543, 546:

"The rule is well settled that, when a patent has once been sustained by an appellate court, a subordinate court, dealing with the same patent subsequently, inquires, first, whether the second record contains anything not before the appellate court (whether mentioned in its opinion or not), and, if it finds something new, inquires next whether the new matter is of such a character that it may fairly be supposed that the appellate court would have reached a different conclusion, had it been advised of its existence."

The same rule is recognized in the following cases: Conley v. Thomas (D. C.) 204 Fed. 93, 94; Cincinnati Butchers' Supply Co. v. Walker Bin Co., 230 Fed. 453, 454, 144 C. C. A. 595; Taigman v. Desure et al., 253 Fed. 364, 365, 366, 165 C. C. A. 146; Weber Electric Co. v. Cutler-Hammer Mfg. Co., 256 Fed. 31, 32, 167 C. C. A. 303; Rose v. Fretz (C. C.) 98 Fed. 112; Electric Mfg. Co. v. Edison Electric Light Co., 61 Fed. 834, 10 C. C. A. 106; N. Y. Filter Co. v. Niagara Falls Waterworks Co., 80 Fed. 924, 929, 26 C. C. A. 252; Crier v. Innes et al., 170 Fed. 324, 325, 95 C. C. A. 508; Simonds Counter Mach. Co. v. Knox (C. C.) 39 Fed. 702. See, also, Bone v. Com'rs of Marion County, 249 Fed. 211, 161 C. C. A. 247; Frank A. Bone v. Com'rs of Marion County, 251 U. S. 134, 40 Sup. Ct. 96, 64 L. Ed. 188.

Applying the foregoing rule to the case at bar, the first inquiry is: What is there in the present record which was not before the Circuit Court of Appeals in Drum v. Turner? It is contended on behalf of the defendant that the evidence discloses four structures, all of which are anticipating structures to the Norcross: (1) A reservoir roof at the Bridgewater State Farm, in Massachusetts, in the latter part of 1900; (2) Speer patent, Austria, No. 2,412, of 1900; (3) Far Rockaway power house, described in the Engineering News for September 14, 1899; (4) the Elizabethport, N. J., structures, also referred to as the Hill structures, in May and June, 1901.

The first of these alleged anticipating structures, the Bridgewater reservoir roof, has been described and discussed upon the present trial

in considerable detail; but it is unnecessary in my judgment to review that evidence and compare the reservoir structure with Norcross, for the reason that this Bridgewater reservoir roof was before the Circuit Court of Appeals in Drum v. Turner. It was disclosed in that record by an exhibit entitled "Doings of Expanded Metal," published in February, 1901. This publication described in detail the Bridgewater reservoir roof, and gave cuts showing the construction. This structure, thus disclosed, was considered by the Circuit Court of Appeals, and held not to anticipate Norcross. The court, in its opinion, referring to this reservoir roof and other alleged anticipating structures, said:

"They have also received study and meditation, but none of them comes nearer to an anticipation of the claims of the patent to Norcross, or to a limitation of the range of mechanical equivalents which they secure, than the patents which have been already discussed."

But it is now claimed in the present suit that the exhibit "Doings of Expanded Metal" was not understood by the Circuit Court of Appeals in Drum v. Turner. It is to be noted that the same structure was again pressed upon the attention of that court in the petition for rehearing in Drum v. Turner. Under these circumstances, even in the light of the additional explanatory testimony, it would be the height of presumption for this court to say that the Circuit Court of Appeals did not understand the construction of the reservoir roof.

The second alleged anticipating structure is that disclosed by the Speer patent. This patent was set up in the answer in Drum v. Turner, but was not introduced in evidence. A comparison of this Speer patent with the Halberg patents, No. 659,965 and No. 659,966, leads me to the conclusion that the reason why the Speer patent was not introduced in evidence in the suit of Drum v. Turner was because it was thought to be substantially the same in principle as Halberg. The Halberg patents were introduced in evidence in Drum v. Turner, and were carefully discussed by the Circuit Court of Appeals, and found not to be anticipations of Norcross. In view of the similarity of Speer and Halberg, it is a fair inference that, if Speer had been offered in evidence in Drum v. Turner, it would have been rejected along with Halberg.

The third and fourth alleged anticipating structures are the Far Rockaway power house, disclosed in the Engineering News of September 14, 1899, and the so-called Elizabethport, or Hill, structures, disclosed in the "Transactions of the American Society of Civil Engineers," dated and published in June, 1900, and also on this trial by a considerable amount of oral testimony and exhibits. While neither of these structures were before the Circuit Court of Appeals in Drum v. Turner on the original hearing upon appeal, yet they were both before that court on the application for leave to file a bill of review, and described in considerable detail.

It thus appears that, of the four alleged anticipating structures now presented, one was before the Circuit Court of Appeals on the original appeal in Drum v. Turner, a second was before that court at the same time, in the form of a substantial equivalent, while the third and fourth were brought to the attention of that court by an application for leave to file a bill of review. Considering the far-reaching character of the issues involved in Drum v. Turner, the ability and diligence of counsel

in that case, in the course of long and bitterly contested litigation and the exhaustive opinion of the court, it is certain beyond a peradventure that everything in the way of evidence presented to that court, whether on the original appeal, or on the petition for a rehearing, or on the application for leave to file a bill of review, received full and careful consideration, and the conclusions reached were not the result of misunderstanding, but of deliberate judgment.

But, in addition to my conclusion that the four alleged anticipating structures now presented to this court were all at one time or another and in one form or another before the Circuit Court of Appeals in Drum v. Turner, I am further clearly of the opinion that, if all of the additional evidence now before this court as to said four alleged anticipating structures had been before the Circuit Court of Appeals, the conclusions of that court would have been the same. The analysis, interpretation, and scope of the Norcross invention were stated by that court, speaking through Sanborn, J., as follows (219 Fed. 189, 135 C. C. A. 75):

"The purpose of the invention patented to Norcross was to make in one panel or piece, extending throughout a building, however large, a monolithic flooring composed of a metallic network imbedded in concrete which would sustain itself and its load upon separated posts without the use of girders, floor beams, or other horizontal supports. The principle or mode of operation of the device by which this object was attained was to imbed in a concrete flooring a metallic network, consisting of strips of heavy wire netting which were laid lengthwise of the building, crosswise of the building, and diagonally over the tops of and supported by the columns, so that a strip lengthwise, a strip crosswise, and a strip laid diagonally would lie on or under each other over the top of each post in cobhouse fashion, and leave only small triangular spaces in any rectangular space between four posts free from this metallic network."

And again the court said (219 Fed. 192, 135 C. C. A. 78):

"The purpose of the invention of Norcross and of the device of Turner was to provide a monolithic single panel floor, composed of concrete wherein large wire or small rods were inclosed, which would support itself and its load on separate columns, without beams or horizontal supports of any kind. * * * The invention of Norcross attained it by the use of strips of heavy wire netting inclosed in concrete extending lengthwise of the building, crosswise of the building, and diagonally over the tops of supporting posts, and Turner by the use of belts of small iron rods inclosed in concrete extending in the same way over the tops of sustaining posts."

[4] A careful study of the evidence as to these four alleged anticipating structures leads to the conclusion that no one of them anticipates the claims of the Norcross patent, as analyzed and interpreted in Drum v. Turner. Behind the screen of new evidence as to alleged anticipating structures in the present suit is launched a vigorous attack on the analysis, interpretation, and scope of the Norcross patent, as set forth in the opinion of the Circuit Court of Appeals in Drum v. Turner.

In support of the attack are again introduced in evidence several of the patents which were introduced in Drum v. Turner; also a considerable amount of expert testimony touching the character of the Norcross flooring from an engineering standpoint. In effect, what the defendant in the present suit now demands is that this court shall hold that the decision of the Circuit Court of Appeals touching the analysis, interpre-

tation, and scope of the Norcross patent was erroneous. Such a de-· mand cannot be entertained, nor does it require discussion.

[5] The remaining defense in the case at bar is based upon the showing that the defendant is sued for infringement, not on account of the use of the Norcross invention in erecting the building, but on account of the use of the building as owner and occupier after its construction. It is contended that such latter use does not constitute infringement. A consideration of this defense has failed to convince me of any merit therein. Nor do I think the case of Turner v. Quincy Market Co., 225 Fed. 41, 140 C. C. A. 367, goes to a sufficient length to sustain the defense here interposed.

Decree may be prepared in accordance with the foregoing views.